**In the Matter of the ADOPTION OF R.K.Y. (at 363)**

**Appeal of J.R., Natural Mother.**

**In the Matter of D.A.B. (at 364)**

**Appeal of J.R., Natural Mother.**

**In the Matter of the Adoption of J.C.Y. (at 365)**

**Appeal of J.R., Natural Mother.**

**In the Matter of the Adoption of R.Y.Y. (at 366)**

**Appeal of J.R., Natural Mother.**

Superior Court of Pennsylvania.

Submitted May 28, 2013.
Filed July 23, 2013.

Jessica A. Fiscus, Erie, for appellant.

William F. Scarpitti, Jr., Erie, for appellees.

Amy E. Jones, Erie, for Erie County Children and Youth, participating party.

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:

Appellant, J.R., the natural mother of R.K.Y. (D.O.B. 4/14/2005), D.A.B. (D.O.B. 7/31/2001), J.C.Y. (D.O.B. 12/20/2003), and R.Y.Y. (D.O.B. 8/24/2006), appeals from the decrees dated January 14, 2013, terminating her parental rights to all four children. We affirm, although not for the reasons set forth by the trial court.

In May 2011, J.R. reported to police that she had observed bruises on her daughter, R.Y.Y., and that R.Y.Y.'s natural father, T.Y.,[1] was responsible. At the urging of the police and a caseworker from the Erie

---

1. T.Y. is the natural father of R.K.Y., R.Y.Y., and J.C.Y. M.B. is the natural father of D.A.B. The parental rights of T.Y. and M.B. were terminated as part of the proceedings discussed herein.

County Office of Children and Youth ("OCY"), J.R. obtained a temporary protection from abuse order against T.Y. When J.R. refused to follow through to obtain a permanent protection from abuse order against T.Y., who remained in the home, on June 28, 2011 OCY removed the four children and filed dependency petitions for each of them. In the dependency petitions, OCY alleged that J.R., *inter alia*, had mental health issues, drank alcohol excessively, had one of her children take nude pictures of her, allowed the children to have 40 unexcused absences from school, and had engaged in domestic violence with T.Y. in the presence of the children. N.T., 12/14/2012, OCY Exhibit 1.

J.R. stipulated to a finding of dependency for the children, although she denied that she drank excessively, had herself acted violently towards her children, or had ever asked one of them to take nude pictures of her. On July 7, 2011, the trial court adjudicated the children dependent. The trial court conducted dispositional and permanency hearings on July 27, 2011, December 9, 2011, July 10, 2012, and July 18, 2012. Citing the parents' lack of progress in meeting their obligations for reunification, after the July 18, 2012 permanency hearing, the trial court changed the goal for each child to adoption. On July 26, 2012, OCY filed petitions for termination of parental rights for each of the four children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (5), (7), (8), and (b).

At the evidentiary hearing on December 14, 2012, the children did not testify. J.R. and T.Y. testified on their own behalves. OCY called seven witnesses, including Sharon Slubowski ("Slubowski"), an OCY caseworker, and Nora Kreider ("Kreider"), Alicia Twilla ("Twilla"), and Audrey Smith ("Smith") from Parkside Psychological Associates ("Parkside"). OCY retained Parkside to conduct psycho-sexual evalua-

tions of J.R. and the four children. N.T., 12/14/2012, at 11. Kreider interviewed J.R. and Twilla interviewed the four children as well as their foster (pre-adoptive) mother. *Id.* at 12, 56. During the interviews, the children made numerous accusations of physical and sexual abuse by their parents:

- R.Y.Y. reported sexual abuse by T.Y. and claimed that she had observed her mother having sex with both T.Y. and another man (on separate occasions). She also stated that J.R. hit her when she told her about T.Y.'s sexual abuse. *Id.* at 111–20 (OCY Exhibit 17).

- J.C.Y. said that J.R. had rubbed his penis and on another occasion had touched his buttocks when she was naked. He indicated that both T.Y. and one of his mother's other sexual partners had touched his private area, and claimed that when he told his mother about these events she responded that she did not care. He reported seeing his mother having sex with T.Y. and other men, and watching D.A.B. take nude pictures of her. *Id.* at 66–106 (OCY Exhibit 15).

- R.K.Y. claimed that J.R. had repeatedly punched and spanked her, and that one of J.R.'s sexual partners had touched her in her private area. She also indicated that she observed her parents having sex, and that she had been forced to watch pornography. *Id.* at 70–111 (OCY Exhibit 16).

- D.A.B. claimed that he had taken nude photographs of his mother. He also indicated that he had been forced to watch pornography. *Id.* at 58–97 (OCY Exhibit 14).

In contrast, during her interviews, J.R. agreed that T.Y. had, over her objections

and attempts to prevent it, exposed the children to pornography, and that the children had witnessed T.Y. engage in domestic violence towards her. *Id.* at 16–36 (OCY Exhibit 12). She told Kreider that D.A.B. had taken pictures of her, but never in the nude. *Id.* at 16. She denied the remainder of the children's accusations, including that they had ever witnessed her having sex with anyone. She denied having any sexual partners other than T.Y. *Id.* at 16–36 (OCY Exhibit 12).

Smith did not meet with or interview either J.R. or the children. Instead, she reviewed reports of the interviews conducted by Kreider and Twilla in order to co-author (along with Kreider and Twilla) the psycho-sexual evaluations of J.R. (OCY Exhibit 12) and the four children (OCY Exhibits 14–17). Testifying as an expert in child psychology, Smith opined that J.R.'s mental health and drug and alcohol issues limited her ability to make good parenting decisions, and that her failure/refusal to acknowledge the sexual abuse reported by the children left her unable to parent the children safely. *Id.* at 49–50.

Relying on Smith's opinion, the trial court granted OCY's petitions and terminated J.R.'s parental rights to all four children. In its written memorandum opinion in support of its decrees, the trial court concluded that the children had suffered physical and sexual abuse "at the hands of their mother and the father, T.Y." Trial Court Memorandum Opinion, 1/14/2013, at 5. The trial court faulted J.R. for taking the position that the children were not being truthful with their allegations of abuse, ruling that she "cannot remediate that which [she does] not acknowledge." *Id.* at 5–7. Finding that J.R. could not provide the children with a safe environment, and that, in contrast, the pre-adoptive foster parents offered "permanency, stability and attention to their educational, psychological and physical needs in a calm environment," the trial court terminated J.R.'s parental rights. *Id.* at 11.

This timely appeal followed, in which J.R. raises two issues for our consideration and determination:

1. The Orphans' Court committed an abuse of discretion and/or error of law when it indicated in the January 1[4], 2013 decrees that it also terminated J.R.'s rights pursuant to subsections 2511(a)(3), (a)(4), (a)(7), and (a)(9), as [OCY] did not identify these grounds in the petition, did not proceed on these grounds at trial, and did not introduce sufficient evidence to establish these grounds for termination.

2. Did the Orphans' Court commit an abuse of discretion and/or error of law when it relied upon hearsay statements of the children as substantive evidence that J.R. abused or neglected the children, exposed the children to inappropriate situations, and/or failed to protect the children, where the children did not testify at trial, the alleged statements/disclosures contained in the psycho-sexual reports are inadmissible as substantive evidence, and any other alleged statements/disclosures contained within the exhibits were objected to as hearsay[?]

J.R.'s Brief at 13.

■ The standards governing our review of an order terminating parental rights are well settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's

decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

The burden is upon the petitioning person or agency to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. Moreover, we have explained:

> The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'

The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented. If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result.

*In re T.M.T.*, 64 A.3d 1119, 1125 (Pa.Super.2013) (citations omitted).

With respect to J.R.'s first issue on appeal, in OCY's petitions for termination of J.R.'s parental rights, the agency sought termination under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), which provide, in pertinent part:

### § 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*    \*    \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*    \*    \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*    \*    \*

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), (b).

■ In its decrees dated January 11, 2013 (entered January 14, 2013) granting OCY's petitions for termination of parental rights, the trial court cited not just to these subsections in section 2511, but also to subsections (a)(3), (a)(4), (a)(6), (a)(7), and (a)(9). After J.R. raised this issue in her statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), on February 15, 2013 the trial court entered amended decrees removing the references to the subsections not set forth in OCY's original petitions.

As a general rule, the filing of an appeal divests the trial court of jurisdiction over the case. Pa.R.A.P. 1701(a). Rule 1701(b)(1), however, provides an exception to the general rule, permitting a trial court to correct formal errors even after it is divested of jurisdiction. Pa.R.A.P. 1701(b)(1). In this case, the trial court's reference to subsections (a)(3), (a)(4), (a)(6), (a)(7), and (a)(9) in its decrees entered on January 14, 2013 was inadvertent, and it appropriately corrected this simple error in its February 15, 2013 amended decrees. Pursuant to Rule 1701(b)(1), the trial court did not lack jurisdiction to enter the February 15, 2013 decrees. As a result, J.R.'s first issue is moot.

For her second issue on appeal, J.R. contends that the trial court erred when it treated the out-of-court statements of the four children as substantive evidence that J.R. had physically and sexually abused them, exposed them to a variety of inappropriate sexual situations, and failed to protect them from sexual abuse by others. J.R.'s Brief at 26. According to J.R., during the evidentiary hearing the trial court ruled that the out-of-court statements of the children were not being admitted for the truth of the matters asserted, but then accepted them as substantive evidence in deciding to terminate her parental rights. *Id.*

■ Our standard of review with respect to a trial court's evidentiary rulings is deferential. *Commonwealth v. Hernandez*, 39 A.3d 406 (Pa.Super.2012). The admission of evidence is within the discretion of the trial court and such decisions will be reversed only if the trial court has abused its discretion. *Commonwealth v. Nypaver*, 69 A.3d 708, 715–17 (Pa.Super. 2013). Similarly, decisions regarding the admission of expert testimony are left within the sound discretion of the trial court, and we will reverse the trial court's decisions only if we find an abuse of discretion or error of law. *Hyrcza v. West Penn Allegheny Health System, Inc.*, 978 A.2d 961, 972 (Pa.Super.2009) (citing *Smith v. Paoli Memorial Hospital*, 885 A.2d 1012, 1016 (Pa.Super.2005)).

At the evidentiary hearing, counsel for J.R. objected to testimony by Kreider about reports containing out-of-court statements by the children that they observed J.R. and T.Y. having sex. N.T., 12/14/2012, at 22. After learning that the children would not be testifying, the trial court sustained the objection. *Id.* at 23. During Smith's subsequent testimony,

OCY moved for the introduction of the psycho-sexual report on J.R. (OCY Exhibit 12). *Id.* at 50. Counsel for J.R. objected that the report contained out-of-court statements by the children, which were hearsay and thus not admissible for the truth of the matters asserted. *Id.* at 51. The trial court stated that an "expert can rely on hearsay in arriving at a conclusion," and reserved a ruling on the objection. *Id.* At the conclusion of the cross-examination of Smith, the trial court admitted OCY Exhibit 12 into evidence without further comment (including from counsel). *Id.* at 54.

■ Smith was later recalled for more testimony, and counsel for J.R. again objected to testimony regarding various of D.A.B.'s out-of-court statements on the grounds that while these statements could be used to explain the basis for Smith's testimony, they were hearsay and thus not substantive evidence of abuse. *Id.* at 92. The trial court responded that D.A.B.'s statements were not being offered as substantive evidence "as such," and that Smith was instead merely "saying this is the information I considered in rendering an opinion." [2] *Id.* Finally, during the testimony of Slubowski, the OCY caseworker, the trial court twice sustained hearsay objections by counsel for J.R. to references to statements by R.K.Y. and R.Y.Y. regarding sexual abuse. *Id.* at 197, 200.

■ Despite its rulings at the evidentiary hearing that the children's out-of-court statements had not been admitted as substantive evidence of abuse, and despite the absence of any other evidence of abuse in the record (including the lack of any testimony by the children), in its memorandum opinion in support of its decrees terminating J.R.'s parental rights, the trial court specifically found that J.R. had perpetrated acts of physical and sexual abuse on the children:

> All of the children have suffered repeated instances of sexual and physical abuse and neglect. The children have witnessed violence and graphic sexual conduct in the form of pornographic movies and sexual conduct between J.R. and T.Y. The result was complex trauma to all of the children and behavioral issues requiring extensive therapy. The children have suffered physical and sexual abuse at the hands of their mother and the father, T.Y.

Trial Court Memorandum Opinion, 1/14/2013, at 5.

In its written opinion pursuant to Pa. R.A.P. 1925(a) after J.R. filed this appeal, the trial court took a different approach. In its Rule 1925(a) opinion, the trial court made no factual findings that J.R. had physically or sexually abused the children. The trial court instead indicated that the children's out-of-court statements were not admissible as substantive evidence of abuse, but that their admission at the evidentiary hearing had nevertheless been proper because the statements reflected the children's states of mind at the time they were made. Trial Court Opinion, 3/21/2013, at 7–8 (citing *In re Child M.*,

---

2.  OCY contends that J.R.'s failure to object to the admission of the psycho-sexual reports for the four children (OCY Exhibits 14–17) resulted in a waiver of any evidentiary issues with respect to the out-of-court statements of the children contained in those reports. We disagree. As explained above, by the time of the introduction of OCY Exhibits 14–17, counsel for J.R. had raised several hearsay objections to the introduction of the children's out-of-court statements, and the trial court had made clear on multiple occasions that this evidence was being admitted into evidence solely to establish the bases for Smith's opinions. As a result, further objections were not necessary to preserve the evidentiary issues now before this Court.

452 Pa.Super. 230, 681 A.2d 793, 800 (1996)). Importantly, however, the trial court concluded that the lack of substantive evidence of abuse was essentially irrelevant, since "[r]egardless of the veracity of the children's statements," the principal issue was J.R.'s "ability to safely parent her children," and the evidence (*i.e.,* Smith's opinion) shows that she cannot "keep them safe from further abuse or to nurture them." *Id.* at 8.

In our view, the trial court did not err in admitting the children's out-of-court statements into evidence, both for the reasons it stated at the evidentiary hearing (an expert explaining the assumptions on which her opinion is based) and those in its Rule 1925(a) opinion (to reflect the children's states of mind). Beginning first with the bases for an expert's opinion, Rule 705 of the Pennsylvania Rules of Evidence requires an expert to "state the facts or data on which the opinion is based." Pa.R.E. 705. Rule 703 provides that so long as the facts and data the expert relies upon are of a type reasonably relied upon by experts in that particular field of study, "they need not be admissible for the opinion to be admitted." Pa.R.E. 703. In interpreting these evidentiary rules, this Court has held as follows:

It is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession. *Collins v. Cooper,* 746 A.2d 615, 618 (Pa.Super.2000); *Primavera v. Celotex Corp.* [415 Pa.Super. 41], 608 A.2d 515 (Pa.Super.1992). Such material may be disclosed at trial even though it might otherwise be hearsay ... Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: 'The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes.' *Primavera,* 608 A.2d at 520.

*In re D.Y.,* 34 A.3d 177, 182 (Pa.Super.2011) (quoting *Boucher v. Pa. Hosp.,* 831 A.2d 623, 628 (Pa.Super.2003)), *appeal denied,* 616 Pa. 638, 47 A.3d 848 (2012). In the present case, Smith testified that reliance on interviews when preparing a psycho-sexual evaluation, including interviews conducted by colleagues, is "common practice in our field," N.T., 12/14/2012, at 48, thus satisfying the basic prerequisites for admission under Rules 703 and 705.

■ Likewise, the trial court did not err in permitting the introduction of the children's out-of-court statements to show their states of mind for purposes of identifying their needs for therapy and treatment. In *In re Child M.,* a case also involving allegations of child abuse, we ruled as follows:

[T]estimony as to what a child tells other people is admissible in order to establish that child's mental state at the time he or she made the comment. *Rinker Appeal,* 180 Pa.Super. 143, 153, 117 A.2d 780, 786 (1955). *See Liles v. Balmer,* 439 Pa.Super. 238, 249, 653 A.2d 1237, 1242 (1994) (discussing L. Packel & A. Poulin, Pennsylvania Evidence § 801.3 regarding non-hearsay 'state of mind' testimony). It was proper for President Judge Raup to permit mental health professionals to explain Child M.'s needs for particular types of therapy and to admit testimony that documented the child's mental state and his manifestations of trauma.

*In re Child M.,* 452 Pa.Super. 230, 681 A.2d 793, 800 (1996), *appeal denied,* 546 Pa. 674, 686 A.2d 1307 (1996). In this

case, Smith testified that one of the reasons for interviewing the children and preparing psycho-sexual evaluations for each of them was to make treatment recommendations. N.T., 12/14/2012, at 91.

■ While the trial court did not err in permitting the introduction of the children's out-of-court statements into evidence, it is important to recognize that these statements were admitted only for limited purposes (to explain the bases for Smith's opinion and to reflect the children's states of mind). The statements were *not* admissible as substantive evidence of the truth of the children's accusations of abuse. The official comments to Rules 703 and 705 both make clear that when an expert testifies about the underlying facts and data supporting her opinion, the trial court should, upon request, instruct the jury of the limited nature and purpose of the of the disclosures and not to treat them as substantive evidence. Pa. R.E. 703, 705 *Comments; D.Y.*, 34 A.3d at 181; *see also Williams v. Illinois,* —— U.S. ——, ——, 132 S.Ct. 2221, 2228, 183 L.Ed.2d 89 (2012) ("Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause."). Similarly, testimony introduced to show a child's state of mind for treatment and therapy purposes is admissible only for that limited purpose and not as substantive evidence of the truth of the matters asserted. *See, e.g., Child M.,* 681 A.2d at 800; *Rinker Appeal,* 117 A.2d at 786; *see also Bonavitacola v. Cluver,* 422 Pa.Super. 556, 619 A.2d 1363, 1371–72 (1993), *appeal denied,* 535 Pa. 652, 634 A.2d 216 (1993).

■ For these reasons, the children's out-of-court statements do not constitute

substantive evidence proving that J.R. perpetrated any acts of physical and sexual abuse against the children. The children did not testify at the evidentiary hearing, and OCY did not introduce any independent evidence to prove that, for example, J.R. ever sexually or physically abused the children, permitted them to observe her having sex with T.Y. or other men, allowed D.A.B. to take nude pictures of her, or ignored the children's complaints of abuse by others. Even more problematic, cross-examination of Smith by J.R.'s counsel raised various concerns regarding her decision to rely on the credibility of the children's accusations in formulating her opinion that the children were not safe with J.R. Smith acknowledged that D.A.B. had recanted his allegation that his mother had posed for him to take nude photographs of her (which J.C.Y. claimed that he had observed take place). N.T., 12/14/2012, at 86–87. J.C.Y. initially claimed that both his mother and father had sexually abused him, but later changed his mind and said that his father had not done so.[3] *Id.* at 86. R.K.Y. and R.Y.Y. used substantially identical language when making certain allegations of sexual abuse, suggesting that their accusations may have been influenced by others. *Id.* at 81–85. In this same regard, J.C.Y. stated that his foster parents had made negative statements about his mother. *Id.* Finally, while the children's statements generated five separate Childline reports of abuse to authorities, police investigations found all of the allegations to be unfounded, and no criminal charges were ever filed against J.R. or anyone else. *Id.* at 209.

The lack of any substantive evidence to support the children's accusations of abuse

---

**3.** J.C.Y. also alleged that his foster parents had been physically aggressive towards him, but he later recanted this allegation. N.T., 12/14/2012, at 85.

has serious ramifications for the trial court's decision to terminate J.R.'s parental rights on this basis. Smith twice acknowledged that her opinions regarding J.R.'s inability to protect the children from abuse were dependent upon the veracity of the children's accusations that J.R. had in fact abused the children and exposed them to abuse by others. *Id.* at 53, 123. Similarly, the trial court's determination that J.R. had made no progress in developing the parental skills necessary to parent the children safely was based primarily, if not exclusively, on its acceptance of the perceived correctness of Smith's opinion. Based on Smith's testimony, the trial court concluded that J.R. could not possibly make any such progress because she continued to deny that the children had been abused and refused to acknowledge that they had suffered any significant trauma as a result of abuse. Trial Court Opinion, 3/21/2013, at 8.

Because Smith's opinions were based on her assumption that the children's accusations were accurate, and because no substantive evidence in the certified record on appeal provides any support for the veracity of those accusations, Smith's opinions have little probative evidentiary weight. In the absence of any other evidence of abuse, including the lack of any testimony by the children, we are constrained to conclude that the trial court's decision to terminate J.R.'s parental rights on this basis is not supported by competent evidence and therefore amounts to an abuse of discretion. As indicated above, our standard of review when considering decisions to terminate parental rights requires the existence of proof by clear and convincing evidence that the asserted grounds for seeking termination are valid. In the

absence of any substantive evidence to support the children's out-of-court allegations of abuse in this case, we cannot agree with the trial court that Smith's opinion testimony satisfied this high standard.

■ This Court is not bound by the rationale of the trial court, however, and we may affirm on any available basis. *See, e.g., Ross v. Foremost Insurance Co.,* 998 A.2d 648, 656, n. 7 (Pa.Super.2010). Under 23 Pa.C.S.A. § 2511(a), termination may occur based upon any one of the nine listed subsections. *In re: A.S.,* 11 A.3d 473, 478 (Pa.Super.2010). We focus our review here on subsection 2511(a)(8).[4]

■ Pursuant to subsection 2511(a)(8), OCY had to show only that (1) the children have been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the children continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the children. *In re: I.J.,* 972 A.2d 5, 11 (Pa.Super.2009). The first and third requirements were clearly satisfied here, as OCY filed its petitions for termination of parental rights more than one year after the children had been removed from the home, and the trial court found as a matter of fact that termination of J.R.'s parental rights and adoption was in the bests interests of the children (a finding J.R. does not contest on appeal). Trial Court Memorandum Opinion, 1/14/2013, at 11.

With regard to the second requirement, termination under subsection (a)(8) "does not require an evaluation of [the parent's] willingness or ability to remedy the conditions that led to placement of the children." *In re R.J.S.,* 901 A.2d 502, 511 (Pa.Super.2006). Instead, subsection (a)(8)

---

4. On appeal, J.R. has not challenged the trial court's decision that OCY introduced sufficient evidence to satisfy the requirements for termination pursuant to section 2511(b). Accordingly, we will not address that issue herein.

"requires only that the conditions continue to exist" after the twelve month period has elapsed. *I.J.*, 972 A.2d at 9. This Court has recognized that "by allowing for termination when the conditions that led to removal continue to exist after a year, [subsection 2511(a)(8)] implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities." *Id.* at 11–12 (quoting *In re C.L.G.*, 956 A.2d 999, 1005 (Pa.Super.2008) (*en banc* )).

▇▇ In the present case, OCY's original dependency petitions, the trial court's resulting dispositional orders, and all of the subsequent permanency reviews make clear that three important requirements for J.R. to be reunited with the children were that she (1) refrain from the use of alcohol and drugs, (2) participate in mental health treatment, including therapy and medication management, and (3) secure and maintain gainful employment as well as safe and stable housing for the children. The certified record on appeal reflects that J.R. did not satisfy any of these requirements. According to Slubowski, the OCY caseworker, J.R. did not refrain from taking drugs and alcohol, N.T., 12/14/2012, at 179, and her attendance and participation in mental health treatment was spotty at best. *Id.* at 180–81 ("Q. And did she, in fact, show up [for mental health treatment]? A. Not a whole lot. She did have some medication but I don't believe she really took it. She didn't show a commitment or an investment."). OCY introduced into evidence a sizable volume of records to substantiate this testimony, including the results of urine screens and attendance records from mental health facilities. *Id.* at OCY Exhibits 9–11.

During her own testimony, J.R. admitted that while she had initially been able to obtain employment and a small apartment, by the time of the evidentiary hearing she had lost her job and was unemployed, and had left the apartment to move in with her mother in North Carolina. *Id.* at 227, 236–37. Moreover, J.R. admitted that she had largely failed to comply with the requirements for mental health treatment and drug and alcohol cessation:

Q. And you agree you did not seek help for your mental health, you were not consistently going to Safe Harbor, isn't that right?

A. I was attending, and then I stopped and then I went back.

Q. But you had a lot of no-shows and a lot of cancellations, and heard that today?

A. Yes, ma'am, I heard it.

Q. And you agree with that?

A. Yes, ma'am.

Q. So you realize the reason your kids came into care, one of them had to do with your mental health, do you agree with that?

A. Yes.

Q. And you didn't get help for that, correct?

A. No.

　　　＊　　　＊　　　＊

Q. And one of them had to do with drug and alcohol; do you agree with that?

A. Yes.

Q. And even today, you don't even know when your last drink was; is that correct?

A. Yes.

Q. So you agree you're basically in the same position now that you were in June 2011?

A. Right now I'm not surrounded by domestic violence.

Q. But as of June 2012 you were?

A. Yes.

Q. So a year later you're in the same position, correct?

A. Yes.

*Id.* at 241–43.

In its memorandum opinion supporting its decision to terminate J.R.'s parental rights, the trial court found as a matter of fact that "the conditions that led to removal or placement of the children continue to exist." Trial Court Memorandum Opinion, 1/14/2013, at 18. Based upon the above-referenced evidence in the certified record on appeal, this finding of fact was based on competent evidence. Having determined that OCY satisfied all three requirements for termination under subsection 2511(a)(8), we thus affirm the trial court's decrees entered January 14, 2013 terminating J.R.'s parental rights to R.K.Y., D.A.B., J.C.Y., and R.Y.Y.

Decrees affirmed.