J-S57045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF G.S.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S.B., NATURAL | : | |
| FATHER | : | No. 551 WDA 2016 |

Appeal from the Decree Entered March 28, 2016 in the
Court of Common Pleas of Somerset County Orphans'
Court at No(s): 14 Adoption 2015

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 29, 2016**

G.S.B. (Father) appeals from the decree entered March 28, 2016, in the Court of Common Pleas of Somerset County, which terminated involuntarily his parental rights to his minor son, G.S.B. (Child), born in April of 2011. After careful review, we affirm.

This appeal arises from the petition for involuntary termination of parental rights filed by S.J.L. (Mother) on October 1, 2015. The record indicates Mother and Father dated for approximately two or three years and separated in the summer of 2012. N.T., 3/28/2016, at 41, 89. Father has not been actively involved in Child's life since 2012, and the last time Father saw Child was in June of 2014. *Id.* at 17, 126-27. Father is a member of the United States Marine Corps, and was stationed in Virginia during his relationship with Mother. *Id.* at 38. Father currently is stationed at Camp Lejeune in North Carolina, and is regularly deployed overseas. *Id.* at 78-80. Mother married her husband, D.P.L. (Stepfather), in May of 2015. *Id.* at 7.

---

*Retired Senior Judge assigned to the Superior Court.

Stepfather has assisted Mother in caring for Child, and Child knows Stepfather as his father. *Id.* at 24-25, 33.

A termination hearing took place on March 28, 2016. Following the hearing, the orphans' court entered its decree terminating involuntarily Father's parental rights to Child. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issue for our review. "Whether the [orphans'] court's decision to terminate [] Father's rights is unsupported by clear and convincing evidence and said decision is an abuse of discretion and/or error of law." Father's Brief at 6 (unnecessary capitalization omitted).

We consider Father's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the orphans' court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the orphans' court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The orphans' court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to orphans' courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> > \* \* \*

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).[1]

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather, "[p]arental

---

[1] Father makes no effort to argue that the orphans' court abused its discretion pursuant to Section 2511(b). Thus, we will focus our analysis solely on Section 2511(a)(1). *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address Section 2511(b) where the appellant did not make an argument concerning that section).

duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***Id.*** (citation omitted).

Father argues that that he was unable to maintain a relationship with Child due to his frequent military deployments and training exercises, during which he had only limited access to telephones and the Internet. Father's Brief at 12-13. Father contends that he did not know how to reach Mother because she frequently changed her address and phone number, and that Mother repeatedly refused to allow him to have contact with Child when he was able to reach her. ***Id.*** at 12. Finally, Father stresses that he has requested a position as a Pennsylvania-based recruiter for the Marine Corps, which demonstrates his dedication to developing a relationship with Child. ***Id.*** at 12-14.

The orphans' court aptly summarized its findings in support of termination as follows.

> At the hearing, [the orphans' court] found [Father] foreclosed avenues to communicate with [Mother] regarding [Child], either through his own actions or inactions. The evidence showed that Facebook, the telephone, Internet, Skype, and the U.S. Mail provided avenues to communicate with [Child], however, [Father] either failed to utilize them or prevented interaction through these avenues[: Father] "blocked" [Mother] on Facebook; [Mother] consistently provided her contact information and maintained communication with [Father's] parents and other family members who provided [Father] the contact information of both [Child] and [Father's] daughter [] upon [Father's] request; [Father] inquired as to the [Child's]

contact information from his parents when he required it; [Father] had access to U.S. Mail although it took one month to reach any given address; [Father] had access to the telephone and Internet for fifteen minute periods while he was stationed on a ship; [Father] had access to Skype but it used his cell phone data; and [Father] had avenues to communicate with [Child]. Although [Father] argued that [Mother] did not directly provide updated contact information and even argued she refused to let [Father] speak with [Child], [Father] provided no evidence documenting these alleged attempts, outside of a September 30, 2015 phone conversation [which was] outside of the pertinent period, and never sought any form of physical or legal custody which could have remedied any alleged issues over the three year period that he did not contact [Child]. At the hearing, [the orphans' court] also found that, even if the means available to [Father] to contact [Child] presented obstacles, [Father] did not even attempt to utilize these means to contact [Child]. Evidencing [that] attempting to contact [Child] was "annoying" []. As such, the evidence clearly demonstrates that avenues were available to [Father] to contact [Child].

At the hearing, [the orphans' court] further found that, while [Father] had leave from the military and sometimes visited Somerset County during the past three years, [Father] made no effort to see Child. This finding is based on the evidence that: [Father] did not communicate the dates and times of his visits to Somerset County to [Mother;] during [Father's] visits to Somerset County he visited exclusively with family and friends, excluding [Child;] [Father] has not seen [Child] in three years[;] and [Father] was granted leave from the military numerous times in 2014 and 2015 which allowed him to return to Somerset County, Pennsylvania. Based on these facts, [the orphans' court] determined [Father] failed to avail himself of the opportunity to see [Child].

Finally, [the orphans' court] determined that [Father] very clearly expressed no interest in [Child]. This finding is based on the evidence that: [Father] sought no information regarding [Child's] development[;] [Father] never sent gifts for any holiday[;] [Father] never sent [Child] photographs, letters, or cards[;] [Father] does not keep up with [Child's] hobbies[;] [Father] does not know where [Child] attends school[;] [Child] has no benefits of active military personnel[;] [Father] has not acted to foster a relationship between [Child] and [Father's]

natural daughter, [], who is [Child's] half-sister and [Child] does not know who [Father] is.

Orphans' court opinion, 4/26/2016, at 3-5 (citations to the record and footnote removed).

Ultimately, the orphans' court found that Father refused or failed to perform parental duties with respect to Child for at least six months immediately preceding the filing of Mother's termination petition. The court acknowledged that Father's service in the military placed "inconvenient limitations" on his ability to maintain a relationship with Child. Orphans' court opinion, 4/26/2016, at 6. However, the orphans' court reasoned that Father failed to take advantage of the opportunities that he had in order to be a part of Child's life. *Id.* at 3-6.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, Mother testified that Father stayed in contact with her and visited with Child while they remained in a relationship. N.T., 3/28/2016, at 10, 33-34. Mother explained that Father's contact with Child decreased after their relationship ended, and that Father has visited with Child only once since Christmas of 2012. *Id.* at 18. Specifically, Father visited with Child at a park following a child support hearing in June of 2014.[2] *Id.* at 17. Mother

---

[2] Mother testified that she continues to receive child support from Father each month. N.T., 3/28/2016, at 48.

stated that Child did not know who Father was, and that Child was more interested in playing with the other children. *Id.* at 18.

Concerning the six months immediately preceding the filing of her termination petition, Mother testified that Father did not send any cards, letters, or gifts to Child, nor did he ask to speak to Child on the phone. *Id.* at 50. Mother acknowledged that she has changed her address and phone number on several occasions since Child was born, and that she did not always notify Father of these changes. *Id.* at 36-37. Nonetheless, Mother believed that Father would have been able to get in contact with her if he wanted to do so. *Id.* at 28. Mother recalled that she spoke to Father's parents in March of 2015, and informed them that Child was in need of ear surgery. *Id.* at 20. Mother also provided Father's parents with her phone number. *Id.* Father contacted Mother using Skype later that day, and inquired about Child's medical condition. *Id.* at 20, 25. Father informed Mother that he would call her again the following week, but never did so. *Id.* at 26. Mother did not have any other contact with Father until September of 2015, when she called him to ask that he voluntarily relinquish his parental rights. *Id.* at 19-20.

Thus, the record supports the finding of the orphans' court that Father has refused or failed to perform parental duties with respect to Child during the six months immediately preceding the filing of Mother's termination petition on October 1, 2015. Father has had no contact with Child since

June of 2014, and Father has not contacted Mother to inquire about Child's well-being since March of 2015. The record does not indicate that Father did anything during the relevant six-month period to maintain or develop a relationship with Child.

Further, while Father argues that he was unable to maintain a relationship with Child because of his military duties and Mother's ever-changing contact information, Father's own testimony belies that assertion. Father acknowledged during the termination hearing that he has occasional access to phones and the internet even when deployed overseas, and that his parents provided him with Mother's new phone numbers. **Id.** at 81-82, 92, 104. Father also had the ability to write letters to Child, but chose not to do so. **Id.** at 83, 117-19. Finally, while Father emphasizes that he requested an assignment as a Pennsylvania-based recruiter for the Marine Corps, we observe that he did not make this request until sometime in October of 2015. **Id.** at 103; **see** 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.").

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Father's parental rights to Child, we affirm the decree of the orphans' court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016