IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Hooks,                          :
                                       :
          v.                           : No. 946 C.D. 2016
                                       : ARGUED: February 7, 2017
Southeastern Pennsylvania              :
Transportation Authority,              :
                Appellant              :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE HEARTHWAY                    FILED: August 31, 2017


         The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from the April 26, 2016 order of the Court of Common Pleas of Philadelphia County (trial court), denying SEPTA's post-trial motions seeking a new trial. SEPTA's appeal is based on a challenge to the admissibility of testimony by an expert witness on behalf of Nicole Hooks. Discerning no abuse of discretion, we affirm.

         Hooks was working as an assistant conductor on SEPTA's Wilmington train line during the early morning hours of July 5, 2011, when she was struck in the head and injured by an unruly passenger. Hooks brought suit

against SEPTA for negligence.[1]  At trial, Hooks called George Frazier as an expert witness on transportation safety and security.

Frazier is a security consultant for the transportation industry.  The trial court described Frazier's qualifications as follows:

> Captain Frazier has spent twenty-four (24) years working in transportation security for the AMTRAK Police Department, including ten (10) years as AMTRAK's Chief of Police. . . He has approximately two thousand (2000) hours of training including specific training in areas such as railroad operations, railroad safety, management of incidents, criminal investigations, and records management. . .  He further testified that he had specific independent knowledge and experience with the Wilmington line from his work with AMTRAK and his later work as Director of Public Safety for New Castle County, Delaware. . .

(Trial Court Opinion, 8/11/16, at 4) (citations omitted).  SEPTA did not object to Frazier's qualification as an expert.

However, SEPTA did object to Frazier's testimony insofar as it was based on six interviews of SEPTA conductors.  The conductors were referred to Frazier by Hooks' counsel.  The interviews were not transcribed or documented. The interviewees were not called as witnesses for Hooks at trial.  Outside the presence of the jury, the trial court conducted a hearing pursuant to Pa.R.E. 104 to

---

[1] The Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, authorizes railroad workers to sue employers for negligence.

2

determine whether Frazier's expert testimony, based at least in part on these six interviews, was admissible.

At that hearing, Frazier testified that in this case he followed the methodology typically used by experts in his field of expertise. He acquired and reviewed the available pleadings and discovery. (Notes of Testimony (N.T.), 12/15/16, at 100-01.) He then conducted interviews "just [to] try to get to the bottom line on what had happened in terms of that particular incident and to form an opinion on what the circumstances were that surrounded it." (N.T., 12/15/16, at 101.) After counsel for Hooks and SEPTA had questioned Frazier, the trial court engaged in the following exchange:

> THE COURT: Let me just clarify, you said that many times you and others in the field rely on deposition testimony; is that correct?
>
> THE WITNESS: Yes.
>
> THE COURT: But there are times that you and others in the field rely on witness interviews?
>
> THE WITNESS: Yes, Your Honor.
>
> THE COURT: And you're not the only one who does this; other experts do this as well?
>
> THE WITNESS: Yes, Your Honor.
>
> THE COURT: And there was no deposition testimony that was available to you in this case; is that correct?
>
> THE WITNESS: Yes, Your Honor.

3

THE COURT: Are there other cases that you prepared expert reports where there was no deposition testimony that was available?

THE WITNESS: Yes, Your Honor.

THE COURT: And in those cases, do you also rely upon witness interviews that you conduct?

THE WITNESS: Yes, Your Honor.

THE COURT: Do other experts in the field when they don't have deposition testimony available also customarily rely upon witnesses to interview?

THE WITNESS: Yes, Your Honor.

(N.T., 12/15/16, at 12-13.)

SEPTA objected to Frazier's testimony on the bases that the interview subjects were not under oath; the interviews were not reduced to writing; and that the credibility of the interviewees could not be tested. SEPTA also alleged that Frazier's expert opinion was based solely on the contents of the challenged interviews, and that Frazier was simply acting as a conduit for that content. In response to SEPTA's objection, the trial court further questioned Frazier:

THE COURT: In preparing your. . . 14-page report as part of your methodology, did you rely exclusively on what those approximately six people said to you, or did your investigation go beyond just those interviews with those six people?

THE WITNESS: I formed my opinion based on much more than those six people.

4

(N.T., 12/15/16, at 120.) Frazier then elaborated on other sources of information that informed his opinion in this case, including the depositions of Hooks and SEPTA police and safety personnel, and SEPTA policies and records.

The trial court overruled SEPTA's objection to Frazier's testimony. However, the trial court did deliver a special instruction[2] to the jury immediately after accepting Frazier as an expert witness:

> Ladies and gentlemen of the jury, before we proceed further, let me explain to you that as part of Mr. Frazier's testimony you will be hearing testimony. . . regarding statements made to him by various SEPTA employees who may or may not be coming in as witnesses to testify later in the trial.
>
> It is important to recognize that these statements regarding those SEPTA employees—regarding the statements that the SEPTA employees made to Mr. Frazier are admitted to you only for a limited purpose, and that is to explain the bases or part of the bases of Mr. Frazier's testimony.
>
> The statements are not admissible and should not be considered by you as substantive evidence of the truth that they assert.

(N.T., 12/15/16, at 146.)

---

[2] "When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge upon request must, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence." Pa.R.E. 703 cmt.

5

Frazier testified that, in his opinion based on his experience, training and all of the information available to him: (1) SEPTA failed to ensure the safety of its crews; (2) SEPTA failed to adequately train its crew members to deal with unruly passengers; and (3) SEPTA failed to provide sufficient police or security coverage in the Wilmington line. At the conclusion of the trial, the jury found in favor of Hooks on the issue of negligence and awarded her $229,000 in damages.

On appeal, SEPTA argues that the trial court erred by allowing Frazier to present his opinion to the jury because it was based on impermissible hearsay and "lacked the requisite factual underpinnings, independent analysis and reliability." (SEPTA's brief, 11/23/16, at 3.) SEPTA seeks a new trial. However, this Court will award a new trial on appeal "only if the trial court abused its discretion or committed an error of law that controlled the outcome of the case." *Cummings v. State System of Higher Education,* 860 A.2d 650, 654 (Pa. Cmwlth. 2004) (citation omitted). "The admission of evidence is committed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Commonwealth v. Chamberlain,* 731 A.2d 593, 595 (Pa. 1999). "Discretion is abused when the law is not applied." *Id.*

The boundaries and admissibility of expert testimony are controlled by Article VII of the Pennsylvania Rules of Evidence. Rule 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming

6

an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. In applying Rule 703, the Superior Court has held as follows:

> It is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession. *Collins v. Cooper,* 746 A.2d 615, 618 (Pa. Super. 2000); *Primavera v. Celotex Corp. . .* 608 A.2d 515 (Pa. Super. 1992). Such material may be disclosed at trial even though it might otherwise be hearsay. . . Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes." *Primavera,* 608 A.2d at 520.

*In re D.Y.*, 34 A.3d 177, 182 (Pa. Super. 2011).

Though SEPTA complains that the trial court erred by permitting the jury to hear expert testimony based on inadmissible hearsay, the express language of Rule 703 and case law permit such expert testimony where "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* The critical inquiry is not whether the information underlying an expert's opinion would be admissible standing alone. Rather, it is whether the information is of the type that experts in a field reasonably rely upon when forming opinions.

7

In *In re Adoption of R.K.Y.*, an expert in child psychology opined that a mother was unable to safely parent her children. 72 A.3d 669, 673 (Pa. Super. 2013). The expert's opinion was informed in part by a review of reports of psycho-sexual evaluations of four children who did not testify at trial. *Id.* The expert did not conduct the interviews of the children; the evaluations were conducted by the expert's colleagues. *Id.* The expert testified that "reliance on interviews when preparing a psycho-sexual evaluation, including interviews conducted by colleagues, is 'common practice in our field.'" *Id.* at 677. The Superior Court ruled that, under those circumstances, the expert's reliance on interviews in forming her opinion "[satisfied] the basic prerequisites for admission under Rules 703 and 705." *Id.* In this case, the trial court accepted Frazier's testimony that experts in his field rely on information obtained in interviews when forming opinions. The trial court did not abuse its discretion in refusing to exclude Frazier's testimony on the ground that it was in part based on out-of-court interviews.

SEPTA also argues that Frazier's testimony "lacked the requisite factual underpinnings, independent analysis and reliability" for expert testimony. Rule 702 sets forth the criteria for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

8

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. SEPTA's challenge to the "factual underpinnings, independent analysis and reliability" of Frazier's testimony relates to the requirement set forth in Rule 702(c) that an expert's methodology be generally accepted in the relevant field. However, Frazier testified to the satisfaction of the trial court that his methodology was consistent with the methodology of experts in his field, and SEPTA has not identified any evidence in the record that Frazier's methodology was inconsistent with accepted practice in his field.

Citing *Luzerne County Flood Protection Authority v. Reilly*, SEPTA argues that an expert "is not permitted to merely restate another's conclusions without espousing his own expertise and judgement." 825 A.2d 779, 784 (Pa. Cmwlth. 2004). However, in this case the trial court found that:

> In addition to his knowledge, training, and experience, Captain Frazier also relied upon the following: (1) records produced by [SEPTA] in discovery, including police records for the Wilmington line and [SEPTA's] Passenger Operations Manual; and (2) his review of deposition testimony of witnesses such as [Hooks], Ms. Deidra Rich from [SEPTA's] Training Department, and Captain Charles Lawson from [SEPTA's] Police Department.

(Trial Court Opinion, 8/11/16, at 4) (citation omitted). The record does not support SEPTA's premise that Frazier merely parroted the opinions of others.

9

In *Luzerne County*, this Court stated:

> The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the *sound discretion of the trial court.* Where, as here, the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

825 A.2d at 784 (citation omitted) (emphasis in original). We cannot conclude that the trial court abused its discretion in ruling that Frazier's testimony was admissible where the record supports the trial court's conclusion that Frazier relied on multiple sources of information of the types reasonably relied upon by experts in his field, and where he also applied his own personal observation, knowledge and experience in the formulation of his opinion.

The Superior Court's discussion in *Primavera v. Celotex Corporation* of the role, significance and limits of expert testimony in contemporary litigation is highly instructive:

> In noting the necessity and value of permitting experts to rely on extrajudicial reports and sources, it is important to stress that it is actually the testifying expert's opinion which is being presented and which is subject to scrutiny, cross-examination and credibility determinations. Hence, it is often the case, as it was here, that experts are questioned concerning whether relied-upon sources are "authoritative" or generally accepted, whether the source material is truly the type ordinarily relied on by similar

10

experts, whether independent or further judgment was brought to bear on particular source material and whether the expert is competent enough to judge the reliability of the sources upon which he relied. These are the safeguards which assure that the experts' opinions are not being offered based on inherently untrustworthy data or data which is not commonly used by other professionals. If an expert has made faulty assumptions or leaps of judgment in relying on certain sources or in forming conclusions based on those sources, these issues are the proper subject of cross-examination.

The relative roles of jury and expert in this context have been described as follows:

> In a sense, the expert synthesizes the primary source material—be it hearsay or not—into properly admissible evidence in opinion form. The trier of fact is then capable of judging the credibility of the witness as it would that of anyone else giving expert testimony. This rule respects the functions and abilities of both the expert witness and the trier of fact, while assuring that the requirement of witness confrontation is fulfilled.

*United States v. Sims,* 514 F.2d 147, 149 (9th Cir.1975), *cert. denied* 423 U.S. 845, 96 S.Ct. 83, 46 L.Ed.2d 66 (1975).

As this court has indicated, the crucial point is that the fact-finder be made aware of the bases for the expert's ultimate conclusions, including his partial reliance on indirect sources. "The adverse party then has the opportunity. . . to present its own countervailing facts and figures and/or expert testimony to convince the factfinder that the weight to be given to the other side's expert testimony should be little or none". *In re Glosser Bros., Inc.,* 382 Pa. Super. 177, 202, 555 A.2d 129, 142 (1989).

608 A.2d 515, 520-21 (Pa. Super. 1992)

In this case, the trial judge had a basis in the record from which to conclude that Frazier's testimony was based on data of the type that experts in his field customarily rely upon. Additionally, SEPTA had the opportunity to challenge the bases of Frazier's opinions and offer evidence to rebut Frazier's testimony. We find no error here.

For these reasons, we affirm the trial court's order.


_____
JULIA K. HEARTHWAY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Hooks,                              :
                                           :
                    v.                     :  No. 946 C.D. 2016
                                           :
Southeastern Pennsylvania                  :
Transportation Authority,                  :
                    Appellant              :


# O R D E R


AND NOW, this 31st day of August, 2017, the order of the Philadelphia County Court of Common Pleas is affirmed.


_____
JULIA K. HEARTHWAY, Judge