J-S34016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.M., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.M., NATURAL FATHER | No. 2131 MDA 2015 |

Appeal from the Decree entered November 23, 2015,
in the Court of Common Pleas of Luzerne County, Orphans'
Court, at No: A-8354

| | |
|---|---|
| IN THE INTEREST OF: R.M., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.M., NATURAL FATHER | No. 2132 MDA 2015 |

Appeal from the Decree entered November 23, 2015,
in the Court of Common Pleas of Luzerne County, Orphans'
Court, at No: A-8356

| | |
|---|---|
| IN THE INTEREST OF: M.M., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.M., NATURAL FATHER | No. 2133 MDA 2015 |

Appeal from the Decree entered November 23, 2015,
in the Court of Common Pleas of Luzerne County, Orphans'
Court, at No: A-8355

BEFORE: PANELLA, STABILE, and JENKINS, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 20, 2016**

R.M. ("Father") appeals from the decrees entered November 23, 2015,

in the Court of Common Pleas of Luzerne County, which involuntarily

terminated his parental rights to his minor daughters, M.M., born in July of

2009, R.M., born in January of 2012, and B.M., born in November of 2013 (collectively, "the Children").[1] After careful review, we affirm.

The Children were placed in foster care on September 17, 2014, after Luzerne County Children and Youth Services ("CYS") received a referral indicating that Father and Mother were residing with the Children in a hotel room, and engaging in drug use. N.T., 11/19/15, at 22-23, 36. In addition, the referral indicated that the conditions in the hotel room were unfit for the Children, and that the Children were not being attended to appropriately. *Id.* When a CYS caseworker arrived at the hotel room with police assistance, Father and the Children fled through a window and hid in the woods, where they were later discovered. *Id.* at 23, 36. The Children were subsequently interviewed, and confirmed that there had been drug use in the hotel room. *Id.* at 37.

On September 25, 2015, CYS filed petitions to terminate Father's parental rights to the Children involuntarily. A termination hearing was held on November 19, 2015, during which the orphans' court heard the testimony of CYS caseworker, Cathy Stamets, and Father. Following the hearing, on November 23, 2015, the court entered its decrees terminating Father's parental rights. Father timely filed notices of appeal on December 8, 2015, along with concise statements of errors complained of on appeal.

---

[1] The Children's mother, N.H. ("Mother"), relinquished her parental rights voluntarily. Mother has not filed a brief in connection with this appeal, nor has she filed her own separate appeal.

Father now raises the following issue for our review. "Whether the [orphans'] court erred in finding that [CYS] met its burden to prove the elements of termination with respect to 23 Pa. C.S.A. §§ 2511(a)(1) and 2511(b), through clear and convincing evidence?" Father's brief at 3 (unnecessary capitalization omitted).[2]

We consider Father's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[2] While Father purports to challenge the termination of his parental rights pursuant to Section 2511(b), Father makes no effort to discuss Section 2511(b) in the argument section of his brief. Thus, Father has waived any challenge to Section 2511(b), and we address Section 2511(a)(1) only. *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013), *appeal denied*, 76 A.3d 540 (Pa. 2013) (declining to address Section 2511(b) where the appellant did not make an argument concerning that section); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). **Id.** (quoting **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **Id.** (citation omitted).

Instantly, the orphans' court found that Father has not attended a visit or had any other contact with the Children since March 6, 2015. Orphans' Court Opinion, 1/16/2016, at 2. The court emphasized that Father failed to send the Children gifts, cards, or letters, and that Father failed to make any other efforts to communicate with the Children indirectly. *Id.* at 5. The court concluded that Father did not present a reasonable explanation for this lack of contact during the termination hearing. *Id.* at 7.

Father argues that he has been unable to visit with the Children because he moved to Wilkes-Barre, and because CYS has been unwilling to move his visits from the Hazelton office of CYS to the Wilkes-Barre office of CYS. Father's brief at 8. Father insists that he does not own a vehicle, and that it "defies logic" that he should be required to visit the Children in Hazelton when he lives in Wilkes-Barre. *Id.* at 8-9. Father offers no explanation for his failure to send the Children gifts, cards, or letters.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, CYS caseworker, Cathy Stamets, testified that Father was offered visits with the Children once per week at the Hazelton office of CYS. N.T., 11/19/2015, at 24. Father last attended a visit with the Children on March 6, 2015. *Id.* at 25, 38. Ms. Stamets explained that a van went to pick up Father at his residence on the days that he was offered visits, and that, after March 6, 2015, the van driver discovered that Father was no longer living at his previous home. *Id.* at 24-25, 38. CYS did not know where Father had

moved, and Father's whereabouts remained unknown until approximately September or October of 2015, when Father's brother informed CYS that Father was working at a local restaurant. *Id.* at 38-40. Ms. Stamets was not aware of Father making any attempts to contact CYS during the time that his whereabouts were unknown. *Id.* at 40.

Ms. Stamets further testified that Father did not have any indirect contact with the Children during the six months prior to the filing of the termination petitions on September 25, 2015. Father did not provide financial support for the Children, did not send gifts to the Children, and did not send the Children cards or letters. *Id.* at 25-26. Father did not contact CYS and inquire as to the well-being of the Children, nor did he attend any medical or educational appointments. *Id.* at 26-27.

Father testified that he contacted CYS after leaving his previous residence, and asked that his visits with the Children be moved to the CYS office in Wilkes-Barre. *Id.* at 46-47, 54-55. However, according to Father, CYS did not permit his visits to be moved. *Id.* Father claimed that he continued to call CYS and leave messages, but no one called him back. *Id.* at 48. Father stated that he does not have transportation, and that he would not have missed any visits if the visits were moved to Wilkes-Barre. *Id.* at 49-50. Father acknowledged that he did not send any letters to the Children, but he insisted that CYS did not inform him that he could send letters. *Id.* at 58.

Thus, the record confirms that Father has refused or failed to perform parental duties for a period of at least six months prior to filing of the termination petitions on September 25, 2015. While Father testified that he contacted CYS after leaving his prior residence, the orphans' court was free to reject Father's testimony, and to accept the testimony of Ms. Stamets that Father did not make contact with CYS, and that CYS did not know where he was. Moreover, Father did not testify that he made any other efforts at contacting the Children during the relevant six months.[3] Father failed to display even a passive interest in the Children, and he is not entitled to relief.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights involuntarily, we affirm the decrees of the orphans' court.

Decrees affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2016

---

[3] At best, Father testified that he went to the school of one of the Children to "watch her Halloween thing." *See* N.T., 11/19/2015, at 49, 56. This event presumably would have occurred in late October, and was therefore well outside of the critical six-month period.