J-S57044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: L.J.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: H.A.B., NATURAL FATHER | No. 364 WDA 2016 |

Appeal from the Order entered February 5, 2016,
in the Court of Common Pleas of Lawrence County,
Orphans' Court, at No(s): 20029 of 2015 OC

| IN THE INTEREST OF: T.L.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: H.A.B., NATURAL FATHER | No. 365 WDA 2016 |

Appeal from the Order entered February 5, 2016,
in the Court of Common Pleas of Lawrence County,
Family Court, at No(s): 20028 of 2015 OC

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 7, 2016**

H.A.B. (Father) appeals from the orders entered February 5, 2016, in the Court of Common Pleas of Lawrence County, which terminated involuntarily his parental rights to his minor daughters, L.J.B., born in February of 2009, and T.L.B., born in July of 2010 (collectively, the Children). After careful review, we affirm.

This appeal arises from the petitions for involuntary termination of parental rights filed by M.L.D. (Mother) on July 2, 2015. The record reveals

---

* Retired Senior Judge assigned to the Superior Court.

that Mother and Father dated for a period of about ten years, from 2002 until October of 2012. N.T., 1/21/2016, at 50. Father has had minimal contact with the Children since his separation from Mother, and he has not visited with the Children at all since April of 2013. *Id.* at 32-33. Meanwhile, Mother married her current husband, K.C.D., Jr., in March of 2014. *Id.* at 5.

The trial court held a termination hearing on January 21, 2016. Following the hearing, on February 5, 2016, the court entered its orders terminating involuntarily Father's parental rights to the Children. Father timely filed notices of appeal.[1]

Father now raises the following issues for our review.

[1.] Should the parental rights of a natural parent be terminated where the [trial] court has not considered the totality of the circumstances, which includes a history of illness and chronic conditions on the part of the respondent parent?

[2.] Should the parental rights of a natural parent be terminated where the court has failed to examine what should be expected of an individual parent facing such obstacles of illness and pain?

Father's brief at 5 (trial court answers omitted).

We consider Father's claims mindful of our well-settled standard of review.

---

[1] Father failed to file concise statements of errors complained of on appeal at the same time as his notices of appeal, as required by Pa.R.A.P. 1925(a)(2)(i). The trial court ordered Father to file concise statements on March 11, 2016, and Father timely complied. We have accepted Father's concise statements pursuant to *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

- 2 -

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows.

- 3 -

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).[2]

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citing ***In re Adoption of R.J.S.***, 901 A.2d 502, 510 (Pa.

---

[2] Father does not argue that the trial court abused its discretion pursuant to Section 2511(b). Thus, we will focus our analysis solely on Section 2511(a)(1). ***See In re Adoption of R.K.Y.***, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address Section 2511(b) where the appellant did not make an argument concerning that section).

Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child." *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted).

Here, the trial court found that Father evidenced a settled purpose to relinquish his parental claim to the Children and refused or failed to perform parental duties for at least six months immediately preceding the filing of Mother's termination petitions. Findings of Fact and Order of Court, 2/5/2016, at 3. The court emphasized that Father has not had any contact with the Children since April of 2013, and that Father has made no effort to establish contact. *Id.* at 1-2.

Father argues that the trial court abused its discretion because it failed to consider the totality of the circumstances in this case. Father's brief at 26–34. Specifically, Father contends that he suffers from severe medical

conditions, which prevented him from maintaining a relationship with the Children. *Id.*

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating involuntarily Father's parental rights to the Children. During the termination hearing, Mother testified that Father has never played a significant role in the Children's lives. N.T., 1/21/2016, at 36, 46. Mother recalled that Father even refused to sign the Children's birth certificates. *Id.* at 27, 55. Mother reported that Father's only employment during their relationship was as a military reservist, and that Father focused on attending various classes and degree programs rather than contributing to the family's finances. *Id.* at 78-80. Mother explained,

> [Father] had started school in 1998 before I even met him in 2002. He's been to, I don't know, I can't even count how many schools, seven or eight schools. He has three degrees, and he -- some of those degrees he got after the fact of -- you know, that he filed disability for thyroid and blood pressure issues. He received a master's degree after that. He went to medical school for a semester after that. You know, so I'm frustrated with the fact of, you know, you can go to school, but you can't work to support your family. That's frustrating, I'm sorry.

*Id.* at 78. Despite his lack of employment, Mother stated that Father did little to care for the Children during the time that they lived together. *Id.* at 19-20, 46. Instead, the Children were cared for primarily by Mother and by their maternal grandmother. *Id.* at 20-21.

Mother further testified that the Children have seen Father on only three occasions since she and Father separated in October of 2012. *Id.* at 28-33. Father has not seen the Children at all since April of 2013. *Id.* at 32-33. Mother reported that Father has not asked to see the Children since that time, nor has he sent the Children letters or gifts. *Id.* at 36, 38-39, 45-46. Mother explained that while she did speak to Father on the phone two or three times after April of 2013, those calls focused on Mother's child support action against Father.[3] *Id.* at 33-35, 37-38, 70-71.

Thus, the record supports the finding of the trial court that Father has evidenced a settled purpose to relinquish his parental claim to the Children, and refused or failed to perform parental duties during the six months immediately preceding the filing of Mother's termination petitions on July 2, 2015. Father has had no contact with the Children since April of 2013, and Father has made no effort to make contact. While Father claimed during the hearing that he was unable to see the Children due to his various medical conditions, the court was free to conclude that Father's testimony was exaggerated, or to reject it in its entirety.

Accordingly, because we conclude that the trial court did not abuse its discretion by terminating involuntarily Father's parental rights to the Children, we affirm the orders of the trial court.

Orders affirmed.

---

[3] Mother testified that she continues to receive child support payments from Father. N.T., 1/21/2016, at 40, 72.

P.J.E. Ford Elliott joins.

Judge Shogan concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016