J-S68041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.R., FATHER | : | No. 1210 WDA 2019 |

Appeal from the Order Entered July 10, 2019
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-0000040-2014

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.*

MEMORANDUM BY GANTMAN, P.J.E.: **FILED JANUARY 17, 2020**

Appellant, N.R. ("Father"), appeals from the order entered in the Allegheny County Court of Common Pleas, which granted the petition of the Allegheny County Office of Children, Youth, and Families ("CYF") for involuntary termination of Father's parental rights to his minor child, M.R. ("Child"). We affirm.

The relevant facts and procedural history of this case are as follows. Father and A.M. ("Mother") are the natural parents of Child, born in May 2013.

> Child first came to the attention of [CYF] in June 2014, when he was about a year old. Child experienced two relatively brief periods of placement in foster care when neither Parent was available to provide care for him. During both these periods, Mother was incarcerated and Father was in a work-release program related to his criminal court matters. This [c]ourt adjudicated Child dependent in September 2014 and was able to return Child to Parents' care in late October 2014 while Parents continued to pursue their drug treatment programs. Parents successfully satisfied the

_____

* Retired Senior Judge assigned to the Superior Court.

> [c]ourt's and CYF's expectations, and the first dependency matter concluded in May 2015.
>
> Unfortunately, Parents failed to maintain their recovery. Child again came to CYF's attention in March 2018 when Child was not quite five years old, after CYF received a report that Mother appeared impaired at school drop-off and pick-up. Upon investigation, Mother screened positive for cocaine and opiates. Father was incarcerated at the time. CYF obtained an emergency custody authorization ("ECA") and placed Child in foster care, where he has remained. On May 1, 2018, the [c]ourt again adjudicated…Child dependent, noting both Parents' "need to engage in appropriate levels of [drug and alcohol] treatment and to re-establish and maintain sobriety" as well as both Parents' need to "maintain their relationship" with Child.

(Trial Court Opinion, filed September 26, 2019, at 2-3) (internal citations omitted). On January 23, 2019, however, the court entered an aggravated circumstances order as to Father. Soon after, on February 25, 2019, CYF filed a petition to terminate parents' parental rights to Child. Following a hearing on July 9, 2019, the court entered an order on July 10, 2019, terminating Father's and Mother's parental rights.[1] On August 9, 2019, Father filed a timely notice of appeal and a contemporaneous statement of errors complained of on appeal per Pa.R.A.P. 1925.[2]

Father raises the following issues for our review:

> [WHETHER] THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN GRANTING CYF'S

---

[1] Separate guardian *ad litem* ("GAL") and legal counsel represented Child during the dependency/termination proceedings.

[2] Mother filed a separate appeal from the order, which is docketed at No. 1211 WDA 2019 (J-S68042-19).

PETITION TO INVOLUNTARILY TERMINATE…FATHER'S PARENTAL RIGHTS PURSUANT TO 23 PA.C.S. § 2511 (A)(2) IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE THAT…CHILD IS WITHOUT ESSENTIAL PARENTAL CARE, CONTROL OR SUBSISTENCE NECESSARY FOR [HIS] PHYSICAL OR MENTAL WELL-BEING AND THE CONDITIONS AND CAUSES OF THE INCAPACITY, ABUSE, NEGLECT OR REFUSAL CANNOT OR WILL NOT BE REMEDIED BY…FATHER[?]

[WHETHER] THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN GRANTING CYF'S PETITION TO INVOLUNTARILY TERMINATE…FATHER'S PARENTAL RIGHTS PURSUANT TO 23 PA.C.S. § 2511(A)(5) IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE THAT…CHILD WAS REMOVED FROM THE CARE OF…FATHER BY THE COURT FOR AT LEAST SIX MONTHS AND THE CONDITIONS [WHICH] LED TO [HIS] REMOVAL CONTINUE TO EXIST AND THAT…FATHER CANNOT OR WILL NOT REMEDY THOSE CONDITIONS WITHIN A REASONABLE PERIOD OF TIME AND THE SERVICES AND ASSISTANCE REASONABLY AVAILABLE TO…FATHER ARE NOT LIKELY TO REMEDY THE CONDITIONS WHICH LED TO THE REMOVAL OF…CHILD WITHIN A REASONABLE PERIOD OF TIME[?]

[WHETHER] THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN GRANTING CYF'S PETITION TO INVOLUNTARILY TERMINATE…FATHER'S PARENTAL RIGHTS PURSUANT TO 23 PA.C.S. § 2511(A)(8) IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE THAT…CHILD WAS REMOVED FROM THE CARE OF…FATHER BY THE COURT FOR AT LEAST TWELVE MONTHS OR MORE AND THE CONDITIONS [WHICH] LED TO [HIS] REMOVAL CONTINUE TO EXIST AND THAT…FATHER CANNOT OR WILL NOT REMEDY THOSE CONDITIONS WITHIN A REASONABLE PERIOD OF TIME AND THE SERVICES AND ASSISTANCE REASONABLY AVAILABLE TO…FATHER ARE NOT LIKELY TO REMEDY THE CONDITIONS WHICH LED TO THE REMOVAL OF…CHILD WITHIN A REASONABLE PERIOD OF TIME[?]

(Father's Brief at 8-9).

Appellate review of termination of parental rights cases implicates the

- 3 -

following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super.

- 4 -

2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Initially, appellate briefs must conform in all material respects to the briefing requirements in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. When an appellant fails to raise or develop his issues on appeal properly, or where his brief is wholly inadequate to present specific issues for review, this Court can decline to address the appellant's claims on the merits. ***Butler v. Illes***, 747 A.2d 943 (Pa.Super. 2000). ***See also Lackner v. Glosser***, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments must adhere to rules of appellate procedure and arguments which are not appropriately developed are waived; arguments not appropriately developed include those where party has failed to cite authority to support contention); ***Estate of Haiko v. McGinley***, 799 A.2d 155 (Pa.Super. 2002) (stating appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, appellant hampers this Court's review and risks waiver).

Instantly, Father raises three issues on appeal. In his appellate brief, however, Father combines his issues into one argument section with no citation whatsoever to supporting legal authority. ***See*** Pa.R.A.P. 2119(a) (stating argument section shall be divided into as many sections as there are

questions presented, followed by discussion and citations to pertinent legal authorities).  Father's failure to develop his issues on appeal with cogent argument prevents meaningful review of his claims and constitutes waiver. *See id.*; *Butler, supra*.

Moreover, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Eleanor L. Bush, we conclude Father's issues would merit no relief in any event.  The trial court opinion discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed September 26, 2019, at 7-9) (finding: trial court need only find record satisfies elements of one subsection of Section 2511(a); court terminated Father's parental rights to Child under Sections 2511(a)(1), (2), and (5); Father raises no claim regarding termination under Section 2511(a)(1), and has waived any challenge to termination under that subsection; even if Father had properly preserved his claim regarding Section 2511(a)(1), he would not be entitled to relief; during six-month period from August 2018 to February 2019, Father was absent from Child's life and visited Child only twice; by his own admission, Father was either incarcerated or "probably using drugs," rather than functioning as parent; nothing in record suggests Father's conduct before or after applicable six-month period mitigated his disengagement from Child; therefore, evidence satisfied grounds for termination of Father's parental rights under Section 2511(a)(1); as to Father's claim regarding termination under Section 2511(a)(8), court did not

terminate Father's rights to Child based on this subsection).[3]  The record supports the court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm.  **See generally In re K.L.S.**, 594 Pa. 194, 197 n.3, 934 A.2d 1244, 1246 n.3 (2007) (stating where issues are waived on appeal, we should affirm rather than quash appeal).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2020

---

[3] In his Rule 1925 statement or on appeal, Father raised no issue under Section 2511(b), so we will not address it. **See In re Adoption of R.K.Y.**, 72 A.3d 669, 679 n.4 (Pa.Super. 2013), *appeal denied*, 621 Pa. 684, 76 A.3d 540 (2013) (declining to address subsection 2511(b), where parent did not challenge that subsection with respect to termination order).

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF: <br> M.R.., Minor Child. | **CHILDREN'S FAST TRACK APPEAL** <br><br> CP-02-AP-040-2019 |
| APPEAL OF: <br> N.R., Father, and <br> A.M., Mother. | 1210 WDA 2019 <br> 1211 WDA 2019 <br><br> **OPINION** |

**By:**

The Honorable Eleanor L. Bush
Allegheny County Court of Common Pleas
440 Ross Street, Suite 5045
Pittsburgh, PA 15219

**Copies to:**

Counsel for CYF,
Melaniesha Abernathy, Esq.
CYF Adoption Legal Unit
Fort Pitt Commons, Suite 101
445 Fort Pitt Boulevard
Pittsburgh, PA 15219

Counsel for M.R.,
Cynthia B. Moore, Esq.
KidsVoice
700 Frick Building
437 Grant Street
Pittsburgh, PA 15219

Counsel for Mother,
Kiersten M. Frankowski, Esq,
ACBF Juvenile Court Project
Koppers Building, 11th Floor
436 Seventh Avenue
Pittsburgh, PA 15219

Counsel for Father,
Thomas Babinsack, Esq.
542 East 10th Ave.
Tarentum, PA 15084

FILED
19 SEP 26 AM 11: 59
DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF:<br>M.R.., Minor Child.<br><br><br>APPEAL OF:<br>N.R., Father, and<br>A.M., Mother. | **CHILDREN'S FAST TRACK APPEAL**<br><br>CP-02-AP-040-2019<br><br>1210 WDA 2019<br>1211 WDA 2019<br><br>**OPINION** |

## OPINION

Bush, J.                                                   September 26, 2019

On July 9, 2019, following a hearing in the above captioned matter on the same date, this Court issued an order terminating the parental rights of A.M. ("Mother") and N.R. ("Father") to their child, M.R. (the "Child").[1] The Court found that grounds to terminate Mother's parental rights existed pursuant to 23 Pa. C.S. § 2511(a)(2) and (a)(5). The Court found that grounds to terminate Father's parental rights existed pursuant to 23 Pa. C.S. § 2511(a)(1), (a)(2), and (a)(5). The Court then concluded that terminating Parents' parental rights served the Child's needs

---

[1] The Court's Order was docketed on July 10, 2019.

and welfare pursuant to 23 Pa. C.S. § 2511(b). Mother and Father each filed timely appeals. Father asserts that the Court erred when it concluded that the evidence established grounds for termination of his rights. Mother asserts that the Court erred when it concluded that the evidence established that terminating her rights served the Child's needs and welfare.

## I.    Background

During Child's six years of life, Parents have struggled to recover from chronic substance abuse. Child has twice been adjudicated dependent, due primarily to Parents' substance abuse issues and related problems.

Child first came to the attention of the Allegheny County Office of Children, Youth & Families ("CYF") in June 2014, when he was about a year old. Child experienced two relatively brief periods of placement in foster care when neither Parent was available to provide care for him. During both these periods, Mother was incarcerated and Father was in a work-release program related to his criminal court matters.[2] This Court adjudicated the Child dependent in September 2014 and was able to return Child to Parents' care in late October 2014 while Parents continued to pursue their drug treatment programs.[3] Parents successfully satisfied

---

[2] *See* Joint Exhibit A: Stipulations ¶¶ 8, 10.
[3] *See* CYF Exhibit 1: Order of Adjudication and Disposition (September 10, 2014).

the Court's and CYF's expectations, and the first dependency matter concluded in May 2015.

Unfortunately, Parents failed to maintain their recovery. Child again came to CYF's attention in March 2018 when Child was not quite five years old, after CYF received a report that Mother appeared impaired at school drop-off and pick-up.[4] Upon investigation, Mother screened positive for cocaine and opiates.[5] Father was incarcerated at the time. CYF obtained an emergency custody authorization ("ECA") and placed Child in foster care, where he has remained.[6] On May 1, 2018 the Court again adjudicated the Child dependent, noting both Parents' "need to engage in appropriate levels of D&A treatment and to re-establish and maintain sobriety" as well as both Parents' need to "maintain their relationship" with Child.[7]

During the termination hearing on July 9, 2019, the Court heard testimony from CYF Caseworker Stacey Policicchio, expert evaluator Dr. Neil Rosenblum, Auberle Therapist Hannah Berkowtiz, Auberle Case Manager Christi Roskov, and Father. The Court admitted the following exhibits into the record:

Joint A: Stipulations;

CYF 1: Certified Juvenile Court Orders for M.R.;

---

[4] *See* Joint Exhibit A: Stipulations ¶¶ 14-15.
[5] *Id.*
[6] *Id.*
[7] *Id* at ¶ 16; *see also* CYF Exhibit 1: Order of Adjudication and Disposition (May 1, 2018), Findings ¶ 26.

3

CYF 2: CYF Family Service Plans;

CYF 3: Dr. Rosenblum's Report;

CYF 4: Certified Criminal Records for Mother;

CYF 5: Certified Criminal Records for Father.

Since Child's removal, Father has failed to remedy the needs identified by the Court at the time of adjudication. He continues to need drug and alcohol treatment and has only recently re-engaged in treatment.[8] At the time of the termination hearing, Father was detained at the ACTA program, the same work release program he attended in 2014 when Child entered foster care for the first time.[9] Father has also failed to maintain his relationship with Child, explaining his almost complete lack of visits as due to being either incarcerated or "probably using drugs."[10] Father's failure to maintain his relationship with Child resulted in the Court's order of January 23, 2019 in Child's dependency matter finding that this failure established aggravated circumstances.[11] Father did not appeal this order.

Mother, too, has failed to remedy the needs identified by the Court. She failed to complete a drug and alcohol treatment program and has failed to attend

---

[8] Tr. 27, 37, 39, 67 (July 9, 2019).
[9] *See* Joint Exhibit A: Stipulations ¶ 20; *see also* Tr. 83 (July 9, 2019).
[10] Tr. 82 (July 9, 2019).
[11] *See* Joint Exhibit A: Stipulations ¶ 20(c)(iv).

4

most randomly requested drug screens.[12] Mother has visited Child infrequently and inconsistently, attending only 33 of a scheduled 141 visits.[13] Mother also failed to attend a parenting program recommended after concerns arose regarding her interactions with Child at some of the visits she attended.[14] Mother has not progressed beyond supervised visits.[15]

While Parents have struggled, Child has thrived in his foster home. Foster Mother is responsive to Child's emotional and developmental needs, is involved in his school, ensures that he engages in appropriate activities, and is willing to adopt him.[16] Child is comfortable in his relationship with Foster Mother and relies on her to meet his needs.[17] While Child may well experience some degree of loss from termination of Mother's rights, he has already begun to adjust to that emotional loss and feels safe and happy in his foster home.[18]

It was against this background that this Court determined to terminate Father's parental rights pursuant to 23 Pa. C.S. § 2511(a)(1), (2) and (5) and to terminate Mother's parental rights pursuant to 23 Pa. C.S. § 2511(a)(2) and (5).

---

[12] *See* Joint Exhibit A: Stipulations ¶17(a).
[13] Tr. 95 (July 9, 2019).
[14] *See* Joint Exhibit A: Stipulations ¶17(c).
[15] *See* Joint Exhibit A: Stipulations ¶17(d).
[16] Tr. 29, 43-44 (July 9, 2019).
[17] Tr. 44 (July 9, 2019).
[18] Tr. 52, 79 (July 9, 2019).

## II. Issues on Appeal

Father asserts the following challenges to the Court's order of July 9, 2019:

1. The Court erred in granting CYF's petition to involuntarily terminate Father's parental rights pursuant to 23 Pa. C.S. § 2511(a)(2);

2. The Court erred in granting CYF's petition to involuntarily terminate Father's parental rights pursuant to 23 Pa. C.S. § 2511(a)(5);

3. The Court erred in granting CYF's petition to involuntarily terminate Father's parental rights pursuant to 23 Pa. C.S. § 2511(a)(8).[19]

Mother asserts the following challenge to the Court's order of July 9, 2019:

1. The Court erred in concluding that termination of Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa. C.S. § 2511(b).[20]

---

[19] *See* Father's Concise Statement of Matters Complained of on Appeal ¶ 1-3.
[20] *See* Mother's Concise Statement of Matters Complained of on Appeal ¶ 1.

6

## III. Discussion

### A. The Evidence Established Grounds to Terminate Father's Parental Rights.

The Superior Court need not directly address Father's issues in order to dismiss them. This Court found that CYF established three separate grounds for termination of Father's parental rights, based on 23 Pa. C.S. § 2511(a)(1), (2) and (5).[21] Father challenges the sufficiency of the evidence on only two of those three grounds. Of course, this Court need only find that one ground under § 2511(a) has been established in order to terminate parental rights. Thus, the Superior Court need not review the evidence regarding § 2511(a)(2) and (5) if the evidence regarding § 2511(a)(1) supports the Court's order.[22]

Father has not disputed the Court's conclusion that the record established grounds for termination pursuant to § 2511(a)(1), and has consequently waived any challenge regarding it. Nevertheless, this Court will provide a brief review of the ample evidence that supported the Court's conclusion.

---

[21] Father's third issue on appeal appears to be based on a misreading of the Court's order. Father challenges termination of his parental rights based on 23 Pa. C.S. § 2511(a)(8). However, the Court did not include this ground as a basis for its order.

[22] *In re Adoption of R.J.S.*, 901 A.2d 502, 516. n.3 (Pa. Super 2006) ("We emphasize that satisfaction of the requirements in **only** *one* subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination" [emphasis in original]).

7

In order to terminate parental rights pursuant to 23 Pa. C.S. § 2511(a)(1),

CYF must establish by clear and convincing evidence that:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.[23]

During the statutory six-month period – from August 25, 2018 to February

25, 2019, Father was almost completely absent from Child's life. At most, he

visited Child two times in this entire period, once in December 2018 and perhaps

one other time.[24] Other than those two visits, Father took no other action to fulfill

his parental duties. He did not send Child any cards, letters, or financial support.[25]

He did not attend any medical or dental appointments.[26] He did not make inquiries

regarding Child. By his own admission, Father generally was either incarcerated or

"probably using drugs" as opposed to functioning as a parent.[27]

Nothing in the record suggests that Father's conduct at times either before or

after the applicable six-month period somehow cured or compensated for his

disengagement during that time.[28] Rather, the record established that Father's

---

[23] 23 Pa. C.S. § 2511(a)(1).

[24]Tr. 98 (July 9, 2019). Father visited only three times since Child's removal. The two known visits occurred in April 2018 and December 2018. The date of the third visit is unknown, so it could have occurred during the six-month period immediately preceding filing of CYF's petition.

[25] Tr. 27 (July 9, 2019).

[26] Tr. 81 (July 9, 2019).

[27] Tr. 82 (July 9, 2019).

[28] *See In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009) (trial court must consider totality of circumstances, not mechanically apply six-month statutory provision).

repeated periods of incarceration, substance abuse, and lack of involvement in Child's life started well before Child entered foster care placement and have continued since then.[29] Thus, the record clearly supports the Court's conclusion that the evidence established grounds to terminate Father's parental rights pursuant to 23 Pa. C.S. § 2511(a)(1).

### B. The Evidence Established that Terminating Mother's Rights Meets Child's Needs and Welfare.

On appeal, Mother does not contest that grounds existed to terminate her parental rights. She only contests the Court's conclusion that termination of her parental rights meets the needs and welfare of her Child. Because Mother does not contest that grounds exist for termination, the reviewing court need only consider whether this Court's decision that termination best serves the Child's developmental, physical, and emotional needs and welfare was supported by competent evidence.[30]

As discussed in *In re N.A.M.*,[31] the inquiry into whether terminating a parent's rights serves the child's needs and welfare necessarily includes inquiry into the

---

[29] *See* Joint Exhibit A: Stipulations ¶ 22 (listing Father's repeated periods of incarceration throughout the Child's life); *see also* Tr. 68 (Father admits that all of his incarcerations are due to his substance abuse problems and "finding ways to get high").

[30] *See In re J.F.M.*, 71 A.3d 989 (Pa. Super. 2013) (discussing two-step analysis by which the court must first find that grounds to terminate under 23 Pa. C.S. § 2511(a) exist before addressing child's needs and welfare under 23 Pa. C.S. § 2511(b)).

[31] 33 A.3d 95 (Pa. Super. 2011).

nature and status of any bond between the parent and child and the effect on the child

of severing that bond, if it exists:

> However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.-S.*, 958 A.2d 529, 533–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa.Super.2003)."[32]

In this matter, the evidence amply supported the Court's conclusion that

termination of Mother's parental rights served the Child's needs and welfare.

At the time of the hearing, the Child had been in placement for sixteen

months and was 6 years old. As described by Dr. Rosenblum, who performed

evaluations in this matter, Child has experienced sufficient contact with Mother

through the first four years of his life for him to continue to demonstrate some

level of attachment to her.[33] However, Mother's involvement since Child's

---

[32] *In re N.A.M*, 33 A.3d at 103.
[33] Tr. 45 (July 9, 2019).

placement has been inconsistent and unreliable. Mother attended less than 25% of her scheduled visits with Child.[34] Further, Mother has not made progress toward overcoming her substance abuse issues. Indeed, at the time of her evaluation appointment with Dr. Rosenblum, Mother admitted to both heroin and cocaine use as recently as spring of 2019.[35]

While Mother has continued to struggle with her addiction, Child has become attached to Foster Mother. Foster Mother is very responsive to Child's emotional and developmental needs. Child has made a positive adjustment to her home, is happy there, and is doing well.[36] Child has come to rely on Foster Mother to meet his daily needs.[37] Thus, while Child may experience some degree of loss resulting from termination of Mother's parental rights, Dr. Rosenblum opined that Child has already begun to adjust to that emotional loss.[38]

Given Mother's chronic substance abuse and lack of progress, the Court justifiably concluded that Child's need for safety, permanency and stability outweighs the possible benefit to Child of maintaining his relationship with Mother.

---

[34] Tr. 95 (July 9, 2019).
[35] Tr. 46 (July 9, 2019); *see also* CYF Exhibit 3: Dr. Rosenblum's Report, 8.
[36] Tr. 43-44 (July 9, 2019).
[37] Tr. 45 (July 9, 2019).
[38] Tr. 52 (July 9, 2019).

## IV. CONCLUSION

For the foregoing reasons the Superior Court should dismiss both Parents'

appeals and affirm this Court's order of July 9, 2019.

By the Court:

The Honorable Eleanor L. Bush