**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.S., MOTHER | : | |
| | : | |
| | : | No. 1019 MDA 2025 |

Appeal from the Decree Entered July 3, 2025
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 059-adopt-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.S., MOTHER | : | |
| | : | |
| | : | No. 1020 MDA 2025 |

Appeal from the Decree Entered July 3, 2025
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 60 ADOPTIONS 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.S., MOTHER | : | |
| | : | |
| | : | No. 1021 MDA 2025 |

Appeal from the Decree Entered July 3, 2025
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 61-adopt-2024

IN RE: ADOPTION OF : F.S., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
APPEAL OF: Y.S., MOTHER :
:
:
:
:
:
: No. 1022 MDA 2025

Appeal from the Decree Entered July 3, 2025
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 062 Adoptions 2024

IN RE: ADOPTION OF F.S., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: Y.S., MOTHER :
:
:
:
:
:
: No. 1023 MDA 2025

Appeal from the Decree Entered July 3, 2025
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 63 Adoption 2024

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: JANUARY 9, 2026**

Y.S. ("Mother") appeals from the decrees, entered in the Court of Common Pleas of Cumberland County, involuntarily terminating her parental rights to five of her children: A.I.S. (born 7/19), B.L.S. (born 9/20), S.H.S. (born 9/20), F.G.S. (born 12/21), and F.M.S. (born 9/23) (collectively, "Children").[1] Counsel has also filed a petition to withdraw, pursuant to

---

[1] The trial court also involuntarily terminated the parental rights of Children's biological father. He is not a party to this appeal.

- 2 -

*Anders v. California*, 386 U.S. 738 (1967).[2] After careful review, we affirm on the basis of the opinion authored by the Honorable Michelle H. Sibert and grant counsel's petition to withdraw.

Judge Sibert set forth the factual and procedural history of this matter as follows:

> Cumberland County Children and Youth Services (CCCYS) first became involved with Mother and [C]hildren in March 2021 due to concerns with C.A.S., another of [Mother's] children that was not subject to the underlying termination proceeding. That matter was resolved and CCCYS['] involvement was closed out. CCCYS became reinvolved in December 2021 when F.G.S. was born drug[-]affected. Mother was referred to Alternative Behavior Consultants (ABC) for a FAST parenting evaluation, but no-showed for her first two visits.
>
> The current CCCYS referral came in June 2023 due to reports that [C]hildren were residing in a home that was "unlivable." CCCYS and police examined the home on June 30, 2023, confirming that the home was in a deplorable condition. Specifically, CCCYS noted that the floor was littered with urine, feces, piles of clothes[,] and trash. There was no running water, and the refrigerator contained only condiments. [C]hildren were dirty, and C.A.S. and S.H.S. had skin irritations. A.I.S.'s hair was so matted that nothing could be done except shave the child's head. The children's car seats were located in a shed covered in cobwebs. Mother submitted to drug testing and tested positive for methamphetamines and buprenorphine.
>
> A shelter care hearing was held on July 3, 2023, after which a hearing officer recommended [C]hildren's immediate placement with CCCYS. The court adopted the recommendation on July 13, 2023. Following an adjudicate[ory] hearing on July 17, 2023[,] a hearing officer recommend[ed C]hildren be adjudicated dependent. The court adopted the recommendation on July 21,

---

[2] The **Anders** process has been engrafted onto parental termination appeals. *See In re J.T.*, 983 A.2d 771, 774 (Pa. Super. 2009), citing *In re V.E. and J.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992).

2023. [C]hildren, having been removed from [Mother's] custody, were placed into foster care. [C]hildren were not up to date on their medical care when placed into foster care. F.M.S. was born a few months later on September 6, 2023. The child was born drug[-]affected and showed signs of withdrawal. CCCYS took emergency custody of the child and F.M.S. was placed into foster care.

Mother was again referred to ABC for a FAST evaluation. She participated in ABC's "TIPS" program and started working on the parenting "SKILLS" program in January 2024. Mother completed approximately five sessions of the SKILLS program. Mother progressed to a point where ABC recommended moving the SKILLS program to a home setting. This never came to fruition[,] as ABC discovered that Mother was facing eviction for failing to pay rent for approximately a year. Mother never told ABC that she was facing eviction, nor did she tell CCCYS. Since Mother never obtained appropriate housing so as to continue the program, the program was never completed.

The deplorable living conditions of [] Mother's home also resulted in her being convicted of endangering the welfare of children. On June 3, 2024, [Mother] was sentenced to 18 months of probation. Mother never reported to her probation officer and provided the probation office an incorrect address. A warrant was issued and she shortly thereafter turned herself in. At that time, [Mother] tested positive for methamphetamine. On August 27, 2024, her probation was revoked and she was resentenced to 14 days to 18 months['] incarceration. [Mother] was paroled on September 20, 2024. She is currently facing a parole violation because she tested positive for Suboxone without producing a valid prescription. She stopped drug testing altogether and has not done so since May 17, 2025.

On September 17, 2024, CCCYS petitioned to involuntar[il]y terminate Mother's [parental] rights to the [above-named] five children. A hearing was initially set for November 2024, but the matter was continued so that Mother could participate in a mental health evaluation. The hearing was eventually rescheduled to April 23, 2025. CCCYS filed amended petitions on April 11, 2025. On April 22, 2025, the day prior to the hearing, Mother gave birth to O.S. Neither CCCYS nor Mother's parole officer knew of her pregnancy. Mother told her caseworker that she [] intentionally hid the pregnancy from CCCYS because she knew O.S. would be placed in foster care. O.S. was born drug[-]affected.

The termination hearing was continued to and held on July 2, 2025. [Mother] appeared for the hearing but refused to enter the courtroom and left the courthouse prior to the start of the hearing . . . against the advice of [counsel].

Trial Court Opinion, 8/25/25, at 1-4[3] (pagination corrected; footnotes omitted).

At the end of the hearing, the court granted CCCYS's petitions and terminated Mother's parental rights to all five children pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and (b). Mother filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925 concise statement of errors complained of on appeal at each docket number.[4] *See* Pa.R.A.P. 1925(a)(2)(i). Mother raises the following claims for our review:[5]

1. Whether the trial court abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights to [C]hildren under [] 23 Pa.C.S.A. § 2511(a)[(8)].

2. Whether the trial court abused its discretion and committed an error of law in terminating [Mother's] parental rights when the conditions which led to the removal or placement of [C]hildren no longer existed or were substantially eliminated, thus contravening [] 23 Pa.C.S.A. §[§] 2511(a) [and] (b).

3. Whether the trial court abused its discretion and committed an error of law in determining it would be in [C]hildren's best interest[s] to have parental rights terminated, when [Mother] loves [C]hildren, and if given sufficient time, would be ready,

---

[3] The trial court erroneously began paginating its opinion on the second page.

[4] We have consolidated Mother's appeals sua sponte. *See* Pa.R.A.P. 513.

[5] CCCYS and Cindy L. Martin, Esquire, court-appointed legal counsel for Children, have not filed briefs but have submitted letters indicating their agreement with counsel for Mother that the appeal is wholly frivolous.

- 5 -

willing, and able to parent [C]hildren and provide for their needs, thus contravening [] 23 Pa.C.S.A § 2511(b).

***Anders*** Brief, at 4-5 (unnecessary capitalization omitted).

Before reaching the merits of Mother's appeal, we must first address counsel's petition to withdraw. To withdraw under ***Anders***, counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [***Anders***] brief to the [appellant]; and (3) advise the [appellant] that [] she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc), citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009). With respect to the third requirement of ***Anders***, that counsel inform the appellant of her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his] petition to withdraw a copy of the letter sent to [his] client advising [] her of [her] rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

An ***Anders*** brief must also comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 6 -

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Mother's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, the issues Mother wished to raise, and counsel's assessment of why that issue is wholly frivolous, with citations to relevant legal authority. Counsel has also provided Mother with a copy of the brief and a letter advising her of her right to retain new counsel or raise additional issues pro se.[6] Accordingly, we find that counsel has substantially complied with the requirements of *Anders* and *Santiago*, and, thus, we may review the issues raised by counsel and also conduct our independent review of the record.

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

---

[6] Mother has not raised any additional arguments on appeal.

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Subsections 2511(a) and (b) of the Adoption Act set forth the grounds a petitioner must prove in order for the court to grant an involuntary termination of parental rights. *See* 23 Pa.C.S.[A] § 2511. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination[.] . . . If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in [s]ubsection 2511(a), the court must then consider whether termination would best serve "the developmental, physical[,] and emotional needs and welfare of the child" under [s]ubsection 2511(b).

*In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021). Under subsection 2511(b), "the child's 'emotional needs' and 'welfare' include 'intangibles such as love, comfort, security, and stability.'" *In the Int. of K.T.*, 296 A.3d 1085, 1106 (Pa. 2023) (citation omitted).

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child. However, the Commonwealth does not have an obligation to make such efforts indefinitely. The Commonwealth has an interest not only in family reunification but

also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered.

*In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006) (citations omitted).

Here, the trial court involuntarily terminated Mother's parental rights pursuant to subsection 2511(a)(8), which provides that the rights of a parent to any child may be terminated where:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

In support of her claims on appeal, Mother argues that, while Children have admittedly been removed from her care for more than twelve months, "the conditions [that] led to removal . . . either have been, or could be[,] remedied[] in a reasonable period of time." *Anders* Brief, at 12. Mother points out that she completed a FAST parenting assessment and a TIPS parenting education program. *Id.* She also completed five sessions of a SKILLS program but "had to stop when the family was facing a possible eviction." *Id.* Mother posits that her efforts demonstrate that she "could" make progress on her permanency plan goals. *Id.* She further argues that her incarceration for a period of time "limited [] her contact with [C]hildren and her ability to work on her permanency plan goals." *Id.* Mother alleges

that the trial court did not adequately consider what she was able to accomplish during her incarceration. *Id.* at 12-13.

With regard to subsection 2511(b), Mother argues that termination was not in Children's best interests, as, "despite her struggles and time away from them, she loves [C]hildren and wants to prove to everyone that she can provide the care they need." *Id.* at 13. Mother believes Children "need her in their li[ves]" and she "wants to be there for them." *Id.* Finally, Mother argues that the trial court's failure to adequately address the bonds Children have with her warrants reversal or remand so that the trial court can make appropriate findings. *Id.* at 14.

We have reviewed counsel's *Anders* brief, the certified record, the trial court opinion, and the relevant law, and conclude that Judge Sibert's well-written opinion thoroughly and correctly disposes of Mother's appellate claims. *See* Trial Court Opinion, 8/25/25, at 5-11. Specifically, with regard to subsection 2511(a)(8), the trial court noted that Mother has failed to: address Children's medical concerns; complete the necessary parenting skills programs; obtain a mental health evaluation; obtain and maintain stable housing; maintain her sobriety; communicate with anyone involved in Children's care, despite having been given the necessary contact information; or resolve her criminal charges. *See id.* at 6-7. Notably, "when given the opportunity to challenge the termination of her parental rights, [Mother] refused to come into the courtroom, and [] left the courthouse." *Id.* at 7-8. In sum, the court concluded that Mother "has made almost no attempt to

- 10 -

alleviate the conditions that led to [C]hildren being removed from her care. The conditions still exist, and reunification is nowhere close to being imminent." ***Id.*** at 8.

With regard to subsection 2511(b), the trial court concluded that Children are all thriving in their current foster care placements and are bonded with their foster parents, who are all adoptive resources. ***Id.*** Conversely, the court noted that "[t]here is nothing to suggest that [C]hildren have a bond with [Mother] or that termination of a bond will adversely affect [them]." ***Id.*** at 10. The court found that termination best serves Children's physical and emotional needs and welfare. ***Id.***

The trial court's findings are all supported by the certified record and we can discern no error of law or abuse of discretion. ***T.S.M.***, ***supra***. Accordingly, we affirm the decrees involuntarily terminating Mother's parental rights to Children. The parties are directed to attach a copy of Judge Sibert's opinion in the event of further proceedings.

Decrees affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/09/2026

In re Adoption of A.I.S.

LISA M. GRAYSON, ESG.
REGISTER OF WILLS

2025 AUG 25 AM 10:0

CLERK OF
ORPHANS' COURT
CUMBERLAND CO., PA

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: NO. 059-ADOPT-2024

In re Adoption of B.L.S.

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: NO. 060-ADOPT-2024

In re Adoption of S.H.S.

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: NO. 061-ADOPT-2024

In re Adoption of F.G.S.

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: NO. 062-ADOPT-2024

In re Adoption of F.M.S.

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
: ORPHANS' COURT DIVISION
: NO. 063-ADOPT-2024

**OPINION PURSUANT TO PA.R.A.P. 1925(a)**

Appellant Y.S. (Mother) appeals from the decrees[1] terminating her parental rights to five of her children: A.I.S. (D.O.B. 7/. /2019), B.L.S. (D.O.B. 9/. /2020), S.H.S. (D.O.B. 9/. /2020), F.G.S. (D.O.B. 12. /2021), and F.M.S. (D.O.B.9/ /2023).

Cumberland County Children and Youth Services (CCCYS) first became involved with Mother and the children n March 2021 due to concerns with C.A.S., another of the parents' children that was not subject to the underlying termination proceeding.[2] That matter was resolved and CCCYS involvement was closed out.[3] CCCYS became

---

[1] The court terminated Mother's parental rights following a hearing on July 2, 2025. The final decree was docketed the next day, July 3, 2025. The court also terminated the biological father's parental rights to the same children. He did not file an appeal.

[2] Notes of Testimony, Termination of Parental Rights Hearing, July 2, 2025 (Hereinafter N.T.) at 47.

[3] Id.

reinvolved in December 2021 when F.G.S. was born drug affected.[4] Mother was referred to Alternative Behavior Consultants (ABC) for a FAST parenting evaluation, but no-showed for her first two visits.[5]

The current CCCYS referral came in June 2023 due to reports that the children were residing in a home that was "unlivable."[6] CCCYS and police examined the home on June 30, 2023, confirming that the home was in a deplorable condition.[7] Specifically, CCCYS noted that the floor was littered with urine, feces, piles of clothes and trash.[8] There was no running water,[9] and the refrigerator contained only condiments.[10] The children were dirty, and C.A.S. and S.H.S. had skin irritations.[11] A.I.S.'s hair was so matted that nothing could be done except shave the child's head.[12] The children's car seats were located in a shed covered in cobwebs.[13] Mother submitted to drug testing and tested positive for methamphetamines and buprenorphine.[14]

A shelter care hearing was held on July 3, 2023, after which a hearing officer recommended the children's immediate placement with CCCYS.[15] The court adopted the recommendation on July 13, 2023.[16] Following an adjudication hearing on July 17, 2023 a hearing officer recommend the children be adjudicated dependent.[17] The court

---

[4] *Id.*
[5] *Id.* at 16-17.
[6] *Id.* at 49.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 50.
[10] *Id.* at 49.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 49-50.
[14] *Id.* at 50.
[15] CCCYS Exhibit 1, Order of Court, in re: Recommendation for Shelter Care.
[16] *Id.*
[17] CCCYS Exhibit 1, Order of Court, in re: Recommendation for Adjudication and Disposition.

1

adopted the recommendation on July 21, 2023.[18] The children, having been removed from the parents' custody, were placed into foster care.[19] The children were not up to date on their medical care when placed into foster care.[20] F.M.S. was born a few months later on September  , 2023.[21] The child was born drug affected and showed signs of withdrawal.[22] CCCYS took emergency custody of the child and F.M.S. was placed into foster care.[23]

Mother was again referred to ABC for a FAST evaluation.[24] She participated in ABC's "TIPS" program and started working on the parenting "SKILLS" program in January 2024.[25] Mother completed approximately five sessions of the SKILLS program.[26] Mother progressed to a point where ABC recommended moving the SKILLS program to a home setting.[27] This never came to fruition as ABC discovered that Mother was facing eviction for failing to pay rent for approximately a year.[28] Mother never told ABC that she was facing eviction,[29] nor did she tell CCCYS.[30] Since Mother never obtained appropriate housing so as to continue the program, the program was never completed.[31]

---

[18] *Id.*
[19] N.T. at 51.
[20] *Id.*
[21] *Id.* at 52.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 17.
[25] *Id.*
[26] *Id.* at 17.
[27] *Id.* at 18.
[28] *Id.*
[29] *Id.* at 19-20.
[30] *Id.* at 54.
[31] *Id.* at 23.

The deplorable living conditions of the Mother's home also resulted in her being convicted of endangering the welfare of children.[32] On June 3, 2024, she was sentenced to 18 months of probation.[33] Mother never reported to her probation officer and provided the probation office an incorrect address.[34] A warrant was issued and she shortly thereafter turned herself in.[35] At that time, she tested positive for methamphetamine.[36] On August 27, 2024, her probation was revoked and she was resentenced to 14 days to 18 months incarceration.[37] She was paroled on September 20, 2024.[38] She is currently facing a parole violation because she tested positive for Suboxone without producing a valid prescription.[39] She stopped drug testing altogether and has not done so since May 17, 2025.[40]

On September 17, 2024, CCCYS petitioned to involuntary terminate Mother's rights to the five children.[41] A hearing was initially set for November 2024, but the matter was continued so that Mother could participate in a mental health evaluation.[42] The hearing was eventually rescheduled to April 23, 2025.[43] CCCYS filed amended petitions on April 11, 2025.[44] On April _ 2025, the day prior to the hearing, Mother gave birth to

---

[32] *Id.* at 27.
[33] *Id.* at 26.
[34] *Id.* at 28.
[35] *Id.* at 26.
[36] *Id.* at 30.
[37] *Id.* at 26.
[38] *Id.*
[39] *Id.* at 28.
[40] *Id.* at 38.
[41] Petition for Involuntary Termination of Parental Rights, Sept. 17, 2024. CCCYS also petitioned to terminate parental rights to C.A.S.
[42] N.T. at 55.
[43] Order of Court, Feb.12, 2025 (Sibert, J.).
[44] Amended Petition for Termination of Parental Rights, April 11, 2025. CCCYS again petitioned to terminate parental rights to C.A.S. as well. They ultimately withdrew that petition and parental rights to C.A.S. were not subject to the termination proceeding

3

O.S.[45] Neither CCCYS[46] nor Mother's parole officer knew of her pregnancy.[47] Mother told her caseworker that she they intentionally hid the pregnancy from CCCYS because she knew O.S. would be placed in foster care.[48] O.S. was born drug affected.[49]

The termination hearing was continued to and held on July 2, 2025.[50] Both parents appeared for the hearing but refused to enter the courtroom and left the courthouse prior to the start of the hearing.[51] They left against the advice of their lawyers.[52] At the end of the hearing the court granted CCCYS's petitions and terminated Mother's parental rights. Mother timely appealed and alleges three errors:

1. This Honorable Court erred as a matter of law and abused its discretion when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of Appellant's parental rights to her child, thus contravening section 2511(a) of the Adoption Act, 23 Pa.C.S.A § 2511(a).

2. This Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights when the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated, thus contravening sections 2511(a) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a), (b).

3. This Honorable Court erred as a matter of law and abused its discretion in determining the best interests of the child would be served by terminating the parental rights of a loving parent when Appellant, if given sufficient time, would be ready, willing, and able to parent the child and provide for his needs, thus contravening section 2511(b) of the Adoption Act, 23 Pa.C.S.A. § 2511(b).[53]

---

[45] Mother's Motion for Continuance, Apr. 22, 2025.
[46] N.T. at 62.
[47] Id.at 32.
[48] Id. at 62.
[49] Id. at 89.
[50] Order of Court, issued May 20, 2025 and docketed May 21, 2025 (Sibert, J.).
[51] N.T. at 6-7.
[52] Id. at 7-8.
[53] Statement of Errors Complained of on Appeal, July 31, 2025.

4

It is well established within the Commonwealth that the termination of parental rights involves a bifurcated process.[54] First, the moving party must establish by clear and convincing evidence the existence of one of the grounds for termination enumerated in 23 Pa.C.S. § 2511(a).[55] If the court finds that a parent's conduct meets one of these grounds, then the court determines whether termination will meet the needs and welfare of the child(ren) pursuant to 23 Pa.C.S. § 2511(b).[56] In weighing the evidence:

> the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, and weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.[57]

The court terminated Mother's rights pursuant to §§ 2511(a)(8) and (b). Pursuant to 23 Pa.C.S. § 2511(a)(8) grounds for termination exist when:

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.[58]

This subsection contains three factors that must be demonstrated for termination to be appropriate: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the

---

[54] *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007)
[55] *Id.*
[56] *Id.*
[57] *Interest of M.E.*, 283 A.3d 820, 830 (Pa.Super. 2022) (citations and quotation marks omitted).
[58] 23 Pa.C.S. § 2511(a)(8).

child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.[59] The twelve-month minimum requirement implicitly recognizes that a child's life cannot be held in abeyance while a parent is unable to perform the actions necessary to assume parenting responsibilities.[60] As such, the relevant inquiry is whether the conditions have been remedied such that reunification of parent and child is imminent at the time of the hearing.[61] Irrelevant to the inquiry is the parent's willingness or ability to remedy the conditions that led to the placement of the children.[62] Additionally, in deciding if termination is appropriate pursuant to § 2511(a)(8), the court may not consider any efforts made by the parent after the petition was filed.[63]

A.I.S., B.L.S., S.H.S., and F.G.S. were removed from the Mother's care in July 2023. F.M.S. was removed from Mother's care in September 2023. By the time the initial termination petitions were filed on September 17, 2024, F.M.S. had been removed from Mother's care for a year and the other four children had been removed for approximately 14 months. By the time that the amended petitions were filed on April 11, 2025, all children had been removed from Mother's care for almost two years, satisfying the first factor of § 2511(a)(8).

CCCYS established by clear and convincing evidence that the conditions which led to the removal of the children still very much existed. Since the children's placement, Mother has shown little to no effort in attaining reunification. She abandoned attempts to address the children's medical concerns.[64] She never completed the necessary

---

[59] *In re P.Z.*, 113 A.3d 840, 851 (Pa.Super. 2015).
[60] *In re Adoption of R.K.Y.*, 72 A.3d 669, 680 (Pa.Super. 2013).
[61] *In re E.J.C.*, 335 A.3d 1222, 1231 (Pa.Super. 2025).
[62] *Id.* at 1230.
[63] 23 Pa.C.S. 2511(b).
[64] N.T. at 65-66.

parenting skills programs through ABC.[65] Though given the opportunity to receive a mental health evaluation, Mother failed to do so and failed to contact CCCYS for assistance in scheduling an appointment.[66] Mother failed to resolve her criminal charges and is currently facing 16 months incarceration if her parole is revoked.[67] Mother failed to obtain and maintain stable housing. As of the date of the TPR hearing Mother's housing was not appropriate for reunification and she lacked beds for the children.[68] She failed to maintain sobriety, as evidenced by her birthing a drug affected child the day prior to the scheduled TPR hearing in April 2025.

Mother's lackluster attempt at reunification is in part due to her complete refusal to communicate with anyone involved in the matter. Her current CCCYS caseworker has never had a face-to-face conversation with her despite attempting to do so.[69] Mother no-called and no-showed to meetings that the caseworker scheduled.[70] The caseworker appeared at a supervised visit to talk to her, and Mother responded by walking past him and refusing to have a conversation.[71] Her parole officer has had sparse communication with her. None of the children's foster parents have any communication with her, nor does she attempt to reach out to communicate with the foster parents or her children. She failed to tell anyone that she was pregnant with O.S. and CCCYS only learned of her pregnancy after the child was born. Moreover, when

---

[65] *Id.* at 67.
[66] *Id.* at 75.
[67] *Id.* at 37.
[68] *Id.* at 31.
[69] *Id.* at 58.
[70] *Id.*
[71] *Id.* at 57.

7

given the opportunity to challenge the termination of her parental rights, she refused to come into the courtroom, and she left the courthouse.

Mother has made almost no attempt to alleviate the conditions that led to the children being removed from her care. The conditions still exist, and reunification is nowhere close to being imminent. Any argument otherwise is meritless, and the second prong of § 2511(a)(8) is satisfied.

The third factor examines whether termination best serves the needs and welfare of the children. The court is confident that CCCYS established this factor by clear and convincing evidence. All five children reside in foster care, and the court heard testimony from each of the foster parents. All children have acclimated to their current homes and are thriving. A.I.S., who has behavioral concerns, is with a foster mother who, for lack of a better term, "specializes" in raising children with elevated behavioral needs. Both the foster mother the CCCYS caseworker testified that foster mom and A.I.S. are bonded. Similarly, B L.S. and S.H.S. are bonded with their foster parents. The twins are diagnosed with autism and their foster parents are strong advocates for them. The foster parents make sure the twins receive the medical attention they need to thrive. F.G.S. and F.M.S. are bonded with their foster family, calling them "mommy" and "daddy."[72] All foster parents indicated that they are adoptive resources. Neither CCCYS nor the foster parents were aware of any reason as to why TPR would harm the children.

The children require both permanency and parents that have the capacity to care for them. Each of the foster families is more than capable of doing so. Mother clearly is

---

[72] *Id.* at 119.

8

incapable of providing any level of care comparable to the foster families. Her level of communication with the children is minimal at best. Her only form of communication with the children is during the weekly visits at ABC. She has had no direct contact with her children's foster families, nor does she attempt to do so. She is not involved in any medical or school appointments, nor is it apparent that she attempts to be involved. Even though the children see Mother weekly it appears that they are more interested in attending visits because they get to interact with their siblings, not their parents.

It is clear to this court that termination best serves the needs and welfare of the children. The children are well-bonded with potential adoptive resources and have little to no relationship with Mother. Nor has Mother exerted any substantive effort of establishing a relationship. The third prong of § 2511(a)(8) is met and sufficient grounds for termination under § 2511(a) are clearly established.

Next the court must consider Section 2511(b), which requires the court to consider the developmental, physical and emotional needs and welfare of the child.[73] The analysis occurs on a case-by-case basis with an eye to the child's best interests.[74] Inter alia, the court must consider: the child's need for permanency and length of time in foster care; whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs.[75] A child's emotional needs and welfare include intangibles such as love,

---

[73] 23 Pa.C.S. § 2511(b).
[74] Interest of K.T., 296 A.3d 1085, 1106 (Pa. 2023).
[75] Id. at 1113.

comfort, security, and stability.[76] An additional consideration is whether severing the parental bond would adversely impact the child.[77]

It is quite clear that termination best serves the children's developmental, physical and emotional needs and welfare. To reiterate what was previously stated, the children are well-bonded to their respective foster families and are thriving. There is an abundance of evidence to show that the foster families have been providing for the children's needs and welfare. After approximately two years, the children deserve permanency, and each foster family indicated they are a pre-adoptive resource. Conversely, Mother is incapable of establishing that she can adequately care for the children. She fails to maintain sobriety and lacks adequate housing. She has put forth almost zero effort over the past few years in establishing and maintaining any form of relationship with her children. There is nothing to suggest that the children have a bond with her or that termination of a bond will adversely affect the children. There is no error in finding that CCCYS established by clear and convincing evidence that termination best serves the children's needs under § 2511(b).

CONCLUSION

As required by law, the court conducted a bifurcated analysis of the termination of Mother's parental rights. The court first found that CCCYS established by clear and convincing evidence that sufficient grounds for termination exist pursuant to 23 Pa.C.S. § 2511(a)(8). The court next performed a needs and welfare analysis pursuant to 23 Pa.C.S. § 2511(b). In doing so the court found by clear and convincing evidence that termination of Mother's parental rights best serves the children's emotional, physical,

---

[76] *Id.* at 1106.
[77] *Id.* at 1112.

and developmental needs. Accordingly, the court did not error in terminating Mother's parental rights.

By the Court,

Michelle H. Sibert,   J.